# Wytheville.

## WINCHESTER MILLING CORP. AND UNITED STATES FIDELITY AND CASUALTY COMPANY v. MAUDE SENCINDIVER, ET ALS.

### June 16, 1927.

1. WORKMEN'S COMPENSATION ACT—*Accident—Cancer—Death from Sarcoma or Cancer Following an Injury—Section 2, Subdivision (d) of the Workmen's Compensation Act, Code of 1924, Section 1887 (2) (d)— Case at Bar.*—Workmen's compensation act, section 2, subd. (d), Code of 1924, section 1887 (2) (d), provides that " 'Injury' and 'personal injury' shall mean only injury by accident, arising out of and in the course of, the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident." In the instant case, the employee died of sarcoma following an injury suffered in the course of his employment and defendants contended that this section barred the right of recovery.

   *Held:* That if there was evidence to sustain the finding that the sarcoma resulted from the alleged injury, or if it was at the time of the accident in a quiescent state and the accident aggravated it and hastened the employee's death, then the requirements of the section are met.

2. WORKMEN'S COMPENSATION ACT—*Accident—Cancer—Death from Sarcoma or Cancer Following an Injury—Case at Bar.*—In the instant case, a proceeding under the workmen's compensation act, decedent, in the course of his employment, sustained a rather severe injury. Previous to the injury he was a strong, healthy man, who had never lost any time from work or complained of any illness. From the time of the injury he was incapacitated, grew worse and worse, and sarcoma or cancer developed at the point of the injury from which he died. The medical theory is that there is a relationship between the receipt of an injury and the origin of sarcoma, and that the degree of injury plays no important part.

   *Held:* That the finding of the Industrial Commission that the sarcoma was either caused by the injury or aggravated by it was sustained by the evidence.

3. WORKMEN'S COMPENSATION ACT—*Causal Connection Between an Injury and the Development of Cancer—Right to Compensation.*—Where the facts show a causal connection between an injury and the development of cancer, then the two cannot be separated, and the victim of the cancer is entitled to compensation. Notwithstanding that the doctors may disagree as to the probable connection between a blow and the development of cancer, from the standpoint of the workmen's compensation act, where a workman is apparently healthy and able to perform his regular work, and immediately following a severe blow, a condition sets up which later turns out to be cancerous, the connection between the blow and such development is clear.

Appeal from an award of the Industrial Commission.

*Award affirmed.*

The opinion states the case.

*Sinnott, May & Leaman* and *Roger B. Copinger,* for the appellant.

*T. Russell Cather,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

This is an appeal from an award of the Industrial Commission in favor of Maude Sencindiver and her two infant children, for $12.00 a week for a period of 300 weeks from May 29, 1925, on account of the death of J. F. Sencindiver, husband and father of the claimants, alleged to have resulted from an accident while he was employed and engaged in the service of the Winchester Milling Corporation, and against the Milling Corporation and the United States Fidelity and Guaranty Company, the insurance carrier.

On and before May 29, 1925, J. F. Sencindiver was employed by the Winchester Milling Corporation as manager of its plant at Winchester, Virginia. On May

29, while engaged in the performance of his duties in the course of his employment, he and one C. W. Grim, a fellow employee, started to go from the employer's elevator to a freight car on an adjoining track for the purpose of examining some wheat. While attempting to step from the elevator to the car Sencindiver's foot slipped and he fell a distance of four or five feet. He immediately told Grim that he had injured himself in the groin, but at the same time he was holding his ribs or chest with his hands. Shortly afterwards he met a Dr. Allen and told him he had fallen and hurt his side. He was told by the doctor to use a hot water bottle on it. He consulted Dr. Pifer of Winchester the next day and complained of a pain in his left groin and a soreness in his right side. An examination disclosed a hernia in the left groin but no external evidence of injury to the right side.

On June 1st the employee returned to Dr. Pifer for further consultation, and again on June 12th he came to Dr. Pifer complaining of severe pains in his right side. On this occasion the doctor found symptoms of pleurisy. He strapped up the side and the employee then continued to work until June 19th. On June 23rd, the doctor was summoned to claimant's bedside. He was in an extremely toxic condition at this time, and remained in bed for seven weeks. He made, apparently, a partial recovery, went back to work about September 1st and continued to do some work until September 14th, at which time he stopped and was never able to resume work of any kind.

X-ray examination revealed a shadow which the doctors diagnosed as pus, and involvement of the fourth rib. On November 17th the rib was removed, specimens sent to Dr. Budd of Richmond, Virginia, for analysis, and the patient's trouble was then diagnosed as sarcoma, or cancer of the rib.

Sencindiver died of the sarcoma or cancer (which after removal of the rib, extended to other parts of his body) on September 12, 1926, about fifteen and one-half months after the injury.

It is undisputed that prior to the injury the claimant had been most regular in the performance of his duties, and that there is nothing in the record to indicate that he had ever complained of illness of any kind prior to the injury.

There were two hearings before the Industrial Commission. One during the incapacity of Sencindiver, in which he was the claimant, and one after his death, in which the wife and minor children are claimants.

The award in the first hearing was based upon a finding of the facts which Chairman Handy, who wrote the opinion, for the Commission, concludes with the significant language: "Whatever may be the medical theory as to the connection between sarcoma or cancer and traumatism, it is nevertheless impossible, as the Commissioner views it, to separate the occurrence of the injury in this case from the condition of disability which has resulted. We have a man who was apparently in sound health—at least he had been a steady worker and there is no testimony to the contrary—who sustains a rather severe injury, following which immediate symptoms developed and very shortly afterwards he became totally disabled.

"The finding is, therefore, to the effect that as a result of the accident sustained, the claimant has been disabled as above set out and that his present disability is due to the injury or has been aggravated by it, so as to bring it within the rule followed in compensation cases," etc.

The second hearing was had on September 29, 1926, before Commissioner Park P. Deans, who wrote the

opinion for the Commission. After a statement of the facts which accords with the previous findings, the opinion concludes: "The Commissioner finds that the death of J. F. Sencindiver was the result of the cancer which has already been found to have either been caused by, or contributed to, by the injury received by him on May 29, 1925.

"An award will be entered in favor of the widow providing for the payment of compensation at the rate of $12.00 per week for a period of 300 weeks," etc.

It is from this second award that an appeal was allowed by this court.

The assignment of error is that the Commission erred in awarding compensation and in holding that death of the deceased resulted from the accident sustained in May, 1925. The contention is that the uncontradicted evidence shows that Sencindiver's death resulted from disease and that the disease did not result naturally and unavoidably from the accident or injury.

[1] That is, it is asserted that claimants' right to recover compensation is controlled by section 2—subdivision "D" of the workmen's compensation act (Laws 1918, chapter 400), which is as follows: " 'Injury' and 'personal injury' shall mean only injury by accident, arising out of and in the course of, the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

It is conceded that if there is evidence to sustain the finding that the sarcoma resulted from the alleged injury, or if it was at the time of the accident in a quiescent state and the accident aggravated it and hastened the employee's death, then the requirements of the above quoted section are met and the present claimants are entitled to compensation.

In this connection counsel for appellants assert that the following propositions are established by the evidence without dispute:

1. That at the time this accident occurred Sencindiver was afflicted with cancer in his side or chest;

2. That the cancer was in no wise caused by the accident;

3. That the cancer caused the death of Sencindiver;

4. That the accident did not hasten his death.

It is then stated that if these four statements are correct, then the Industrial Commission had no right to award compensation in the case.

Without passing upon the question as to whether this court would in any case have the evidence taken before the Industrial Commission certified in order that it may be ascertained whether the finding of fact by the Commission was supported by any evidence at all (because in this case, as appears from the opinions of Commissioners Handy and Dean, there is ample evidence to support the findings of fact), it is only necessary to say if there is evidence, or if there are fair inferences from the evidence, which deny or are in conflict with the first two of these propositions, or with the last proposition of counsel for appellants, the whole structure upon which they depend, falls. It is conceded, of course, that the cancer was the immediate cause of death. It is also conceded that if the cancer had its origin in the injury or the injury hastened death, claimants are entitled to compensation.

As to the first two propositions, independently of the medical or expert testimony in the case, there is ample evidence growing out of the circumstances of the case that the employee was not affected with cancer prior to the injury, and that the cancer was caused by the accident; or if the cancer was present, it was in quies-

cent form, and was aggravated by the injury and the injury hastened death.

Counsel base their contention that their four propositions are beyond dispute wholly upon the theorizing of some of the medical experts and they ignore the undisputed *facts* of the case. The drift of this theorizing, it is true, is to the effect that in the *opinion* of the witnesses the sarcoma was present prior to the injury, and to the effect also, that the type of cancer with which Sencindiver was afflicted, usually results in death within from six to nine months. It is therefore concluded: 1st, that the sarcoma was, beyond question, present at the time of the injury and was therefore not caused by the injury, which is of course true if the opinion of the medical men relied on is alone to be considered; and 2nd, that the sarcoma was not aggravated and death hastened by the injury because the victim in this case lived fifteen months after the injury, whereas persons suffering from sarcoma usually die from six to nine months from the inception of the disease. The inconsistency of these positions to meet the alternate conclusions of the Commission does not seem to have occurred to counsel, but aside from this the undisputed facts of the case and much of the medical testimony, constituting the weight of evidence, support the conclusions of the Commission. For instance, Dr. Pifer and the Commission's medical examiner testified that while in their opinion the sarcoma was a preexisting condition the accident accelerated and caused a more rapid growth of the disease. Dr. Pifer also stated that in his opinion there is a causal connection between the blow and the cancer and he produced authority for his belief that sarcoma was often of traumatic origin, among others, Bryan's Principles of Surgery, where, at page 504, this is said:

"Sarcoma arise independently of any known cause and occur at any age; they may be congenital or arise in the very old. The relationship established between the receipt of an injury and the origin of sarcoma is very interesting. A large percentage of them develop at the site of a recent injury, with no definite time intervening. The degree of injury seems to play no important part in the etiology."

[2] Whatever view we take of the medical opinions, they are frankly, and at best, but theories, but taking them as they are, in connection with the facts heretofore narrated, and taking a common sense, practical view, as courts and commissions must take of the ordinary happenings of life, boiled down to its last analysis the medical theory is that there is a relationship between the receipt of injury and origin of sarcoma, and that the degree of injury plays no important part. With this in mind we find a perfectly healthy, strong man who has never lost any time from work or complained of any illness, suffers an injury and from that time on is incapacitated, grows worse and worse, sarcoma develops at the point of injury, from which he dies. The lay mind, under such circumstances, can reach no other conclusion than that reached by the Commission, viz: that the sarcoma was either caused by the injury or was aggravated by it.

The case of *Lewis* v. *Port of London Authority*, 7 B. W. C. C. 577, referred to, and quoted from, in the opinion of Commissioner Handy is so similar to the case at bar that we, too, feel justified in quoting somewhat at length from it.

In that case a dock laborer who had been apparently of sound health and a good worker was struck by a falling piece of timber on the back. He was incapacitated for about three months, and was then able to

return to his work, although he was never strong and healthy again, and complained of increasing trouble in his back. He was finally taken to the hospital and operated on for cancer of the kidney, and later died as a result of one of the operations. The court held that under these facts an award of compensation was proper. Expressions from the different judges of the court are very pertinent to the present case, because of the similarity of facts between that case and the instant case. The Master of Rolls, Cozens-Hardy stated: "A perfectly healthy man doing his work and having no trouble with his kidneys, becomes immediately after this accident disabled in this sense—not totally prevented from doing his work, but unable to do his work with the same facility and the same ease as before. He became a different man afterwards, and ultimately he was found to have died from a cancer—a malignant tumour, which, according to the medical evidence, might be either started by, or accelerated in growth by, the very severe blow which he received. I think all the doctors agree that the blow might have caused an acceleration in the growth of the cancer—and the circumstances which are found here seem to me scarcely to admit of any other suggestion. If he had ever had any trouble with his kidneys before, or if he had been gradually failing in health, and not able to do his work, and was beginning to feel the infirmities of old age, different consideration might have arisen.

"I think that the learned judge was justified in doing what he did. He listened to the advice of the medical assessor, who had heard all the evidence, and who put some questions to the medical men. The medical assessor told him that if cancer is in an internal organ it does not cause pain unless some nerve is involved, and that the tumour most probably existed

from birth in a quiet, not a malignant, condition. That is a medical opinion which, I think, the judge was perfectly justified in believing. But, however that might be, it was not in a malignant condition—the man was a fully able-bodied man up to the time of the accident. 'That the accident awakened the cancer and considerably accelerated the man's death, otherwise he might have lived for years.' That is the advice which the medical assessor gave, and then the learned judge says: 'The man's history agrees with this; good health up to the date of a severe accident; never the same man afterwards.' For these reasons I think that the learned judge was right in the conclusion which he drew, that it was a case in which he was entitled, and I might almost say, bound to draw the inference which he did, and the award made in favour of the applicants must stand.''

Swinfen Eady, L. J., also stated: "In my opinion, if you look at the evidence as a whole, it affords no reasonable doubt as to what occasioned the man's death. It is not necessary to go so far as that in deciding the appeal. The question we have to consider is, not whether the county court judge jumped or guessed at the conclusion, but whether the conclusion at which he arrived was an inference that might properly be drawn from the facts proved. In my opinion, the facts proved before him were such that it was clearly open to him to draw the inference that he did— that the man's death was the result of the accident— that the malignant tumour, whether it was existent before or not, arose from the accident, and that occasioned his death.''

Pickford, L. J., agreeing with the other judges, stated: "There was evidence that, up to the time of the accident, he had been a man of excellent health,

able to do his work perfectly well and showing no signs of any of the other causes, such as chronic irritation, which were possible causes of the malignant tumour. There was evidence also that, very shortly indeed after the accident, he did experience pains in the back—the expression used by his wife is that he said there was a 'heavy drag on his back.' He was never strong after the accident, having been perfectly strong before. In a short time he had developed symptoms such as would have existed from the malignancy of the tumour, and he continued to exhibit those symptoms until he was operated upon and the malignant tumour was discovered.

"Now, upon those materials it seems to me it is no longer a question of surmise—it is a question of inference to be drawn from those facts—whether the accident is established as the cause, there being evidence of the accident and evidence of matter following the accident which would follow if the accident had caused the malignancy of the tumour, and no evidence of any of the other causes which were suggested."

Numerous other pertinent cases are referred to and quoted from in the opinions and the briefs. They are instructive and convincing and fully sustain the conclusion of the commission and our conclusions here. In view of the undue length of this opinion already we must content ourselves by merely citing those which to us seem especially appropriate. They all deal with cancer in one form or another following injury. They are: *Shaw* v. *C. R. I. & P. Ry. Co.*, 173 Ill. App. 107; *Austin* v. *Red Wing Sewer Pipe Co.*, 163 Minn. 397, 204 N. W. 323; *Slack* v. *Percival*, 198 Iowa 54, 199 N. W. 323; *King* v. *Munising Paper Co.*, 224 Mich. 691, 195 N. W. 812; *Grobuskie* v. *Shipman Koal Co.*, 80 Pa. Sup. Ct. 349; *Canon Reliance Coal Co.* v. *Ind. Com.*,

72 Colo. 477, 211 Pac. 868; *Orff's Case*, 122 Me. 114, 119 Atl. 67; *Whittle* v. *National Aniline and Chemical Co.*, 266 Pa. 356, 109 Atl. 847; *Santa Anna Sugar Co.* v. *Ind. Com.*, 35 Cal. App. 652, 170 Pac. 630.

[3] As Chairman Handy well says in concluding his opinion: "The general rule clearly to be adduced from the decisions in this type of case is that if the facts show a causal connection between the injury and the development of cancer, then the two cannot be separated, and the victim of the cancer is entitled to compensation. It frequently appears in the reports of these cases that the doctors disagree as to the probable connection between a blow and the development of cancer, but from the standpoint of the compensation act, where a workman is apparently healthy, as is the case here, and able to perform his regular work, and immediately following a severe blow, a condition sets up which later turns out to be cancerous, the commissioner believes that the connection between the blow and such development is clear."

To this we may add that the courts have in general found no difficulty in cases similar to the one we are considering here, in applying the ordinary rules of evidence, and in drawing the ordinary conclusions of cause and effect from established facts, and we find none. This, we doubt not, courts will continue to do with a full sense of justification and without apology until the cause of cancer is definitely and scientifically established.

We are of opinion to affirm the award of the Industrial Commission.

*Affirmed.*