RADONICH, RESPONDENT, *v.* ANACONDA COPPER MINING CO., APPELLANT.

(No. 6,909.)

(Submitted January 8, 1932. Decided February 17, 1932.)

[8 Pac. (2d) 658.]

438

*Mr. D. M. Kelly, Mr. D. Gay Stivers, Mr. John V. Dwyer, Mr. John A. Groeneveld* and *Mr. J. T. Finlen, Jr.,* for Appellant, submitted an original and a reply brief; *Mr. Kelly* and *Mr. Dwyer* argued the cause orally.

*Mr. Lowndes Maury* and *Mr. R. Lewis Brown,* for Respondent, submitted a brief; *Mr. Maury* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, while employed by defendant as an underground miner, sustained injuries to his left leg on August 5, 1929, which arose out of and in the course of his employment. Defendant was operating under plan 1 of the Workmen's Compensation Act (Rev. Codes 1921, secs. 2816 et seq., as amended). On September 25 plaintiff filed a claim for compensation with the Industrial Accident Board. Defendant paid compensation of $15 per week for a period of twenty-four weeks, or up to January 20, 1930, and nothing since then. On February 11, 1930, plaintiff filed his petition with the Industrial Accident Board for additional compensation, asserting therein that the injuries caused permanent total disability, and requesting a lump sum settlement. Issue was joined by answer of the defendant. On March 5 a hearing was had before the board.

Most of the evidence at the hearing consisted of the testimony of doctors. It was shown that at the time of the hearing before the board plaintiff was unable to work, but the point of difference between the parties was whether his disability was due, in whole or in part, to the injury of August 5, or to one or the other of two diseases—varicose veins and pulmonary silicosis. Decision of the board was in favor of defendant. Its order recited that "the claimant suffered a slight injury to his left leg between the knee and the ankle on August 5th, 1929. The left leg of the claimant, between the knee and the ankle, is very badly varicosed, and all of the physicians that testified at the hearing declared that his disability was largely due to the varicosity of the leg. Dr. T. B. Moore testified for the claimant that he had not observed the case following the abrasion or injury on August 5th, nor had he seen the claimant later, but made his examination shortly before the hearing. His testimony was to the general effect that an abrasion would cause a disability in the leg which was so badly varicosed. Both Dr. Gregg and

Dr. McDonald who saw the leg in previous conditions testified that the present disability was due entirely to claimant's varcosity of the leg and to his lung condition. Dr. McDonald testified that the abrasion he saw when he first examined the claimant was no larger than a two-bit piece, and that with a few treatments the abrasion was healed, and when he last saw the claimant, prior to the hearing, there was no disability whatever from the injury. He was of the opinion that any disability suffered now by the claimant was not due to his slight injury of August 5th, 1929. This testimony was concurred in by Dr. Gregg. The board is of the opinion that the rule laid down in the *Nicholson Case* [79 Mont. 358, 257 Pac. 270], cannot be applied, for there is not sufficient evidence, or any evidence, in this case that the abrasion of August 5th has aggravated the varicosity of the claimant's leg to such an extent that there is a greater degree of disability as a result than he had previous to the injury, or would have with a leg such as (h)is. The evidence is clear that the injury had healed more than two months before the date of the hearing. Compensation was paid from date of injury to January 20th, which we believe to be beyond the time when Mr. Radonich recovered from any injury which was the result of the accident of August 5th, 1929.'' It thereupon ordered the petition dismissed. Petition for rehearing was denied. Claimant appealed to the district court of Silver Bow county, where the matter was heard on June 18, 1930.

When the matter came on for hearing before the district court, plaintiff moved the court for leave to introduce additional evidence ''in existence at, but not discovered until after this appeal was perfected, and also evidence that was not in existence while the cause was pending before the board, to-wit, the condition of his legs since the appeal was taken.'' In support of the motion plaintiff's affidavit was filed, in which he stated that ''on May 6, 1930, I learned for the first time that Dr. H. J. McDonald, a witness against me at the hearing before the board, had on September 7, 1929, said in answer to the question, 'What was the injury claimant received,'

'Severe contusion of leg,' and had also then answered the question, 'In your opinion, was the cause or extent of the injury or the period of disability influenced by any disease, impairment, infirmity or deformity (explain fully)' 'No'; that appellant was and is the person about whom Dr. McDonald so wrote on September 7th, 1929, though he testified opposite at the hearing before the board.''

Defendant objected to the introduction of the additional evidence. The court announced that additional evidence would be permitted as to the matter set forth in the affidavit of plaintiff, but reserved decision on the question of the changed condition of the leg. Thereupon plaintiff introduced the statement of Dr. H. J. McDonald, referred to in the affidavit, and also called as a witness Dr. James, who did not testify before the board. His testimony did not strengthen, but rather weakened, the case presented by plaintiff before the board. In part he testified that he had been treating plaintiff since April 3, 1930, by injection; that the leg had been responding to treatment and was then much better than when he first saw it. He said: ''My opinion is at the time I saw this man, it wasn't sufficient to lay a man up, keep him from work, because I have a number of them that are much worse that are working every day, even after I injected.''

Defendant then called Drs. Gregg and McDonald, both of whom testified before the board, and Dr. Shields, who did not testify before the board. In the main their testimony was substantially the same as was introduced by the defendant before the board.

On January 7, 1931, the court entered judgment for plaintiff, finding that the leg presented evidence ''of skin broken through from underneath, not only at the point of injury, where there had been an abrasion, but in other spots near by. The main point of injury, and as well the other spots also, had been healed over as to the skin proper, but beneath the surface the tissues are discolored, angry looking, inflamed and swollen for a considerable area around the original point of injury, and extending well back around the leg.'' The

court found "that the injury of August 5, 1929, did aggravate the diseased condition of varicose veins in the left leg, and accepts the report of Dr. S. A. Cooney, to whom the board assigned claimant for examination, rating claimant's disability 15 per cent. of total permanent." Compensation was accordingly awarded on that basis.

On the next day the court by order recalled the judgment of January 7. On April 20 the court entered findings and order for another judgment for plaintiff, and among other things found "that the injury of August 5, 1929, did as a fact aggravate the diseased condition of varicose veins in the left leg; that such aggravation resulted in a sore of permanent character; that claimant is thereby continuously and permanently and totally disabled from pursuing his occupation as an underground miner in so far as regards the use of his left leg below the knee joint, though he still retains use of it for walking purposes only with slow and painful movement and for comparatively short distances. Under this view claimant is entitled to 140 weeks compensation as for loss of leg between the knee and ankle, for a total loss thereof, permanent in character, at the rate of $15.00 per week, or $2,100.00, if paid in bi-weekly installments, on which is to be credited the $360.00 already paid, or a balance of $1,740.00; provided a recovery complete in character be not sooner had." Objections to the findings were filed by defendant. On May 7 judgment in accordance with the findings of April 20 was filed in favor of plaintiff, and this appeal followed.

Defendant contends that the court erred in permitting additional evidence to be introduced on the hearing in the district court, asserting that there was not a sufficient showing of "good cause" within the meaning of section 2960, Revised Codes of 1921. In the view we take of the case it is unnecessary to determine whether the additional evidence was properly received. The evidence before the board was ample to sustain its findings.

Careful consideration of the entire evidence, including the additional evidence heard by the court, fails to reveal

any substantial evidence to support the findings of the court that the injury of August 5 aggravated the diseased condition of varicose veins. All of defendant's witnesses stated that it did not. Dr. Cooney, whose written report was filed with the board, stated in his report, in substance, that the varicosity could be aggravated by contusion, but did not say or give his opinion that it was aggravated. Dr. Moore, plaintiff's witness, who testified before the board, said: "I can't trace his varicose condition to an injury." He further testified that he has seen such a condition as plaintiff's leg presented where there was no injury. On redirect examination he was asked this question: "Doctor, if he was injured as he says he was at that point by a crushing in the mine, then does the injury contribute yet to the trouble with him?" to which he answered, "Surely, aggravates it." But it should be noted that Dr. Moore was not asked whether, if the injury had been healed two months before—as the uncontradicted evidence shows— he would have been of the same opinion.

Dr. James, who testified in behalf of plaintiff before the court, but not before the board, first said that the injury of August 5 would aggravate the condition of the leg, but later he said: "The varicosity might make the sore worse, but there would be no connection between the sore making the varicosity worse, I don't think." And, when asked: "Doctor, assume that this man had a slight abrasion of his shin bone, about the junction of the middle and lower third, about the size of a twenty-five cent piece, that it was treated with a mild dressing, and it healed up in the course of two or three weeks, would you say that it was probable that that injury contributed in any degree to the varicosity of the veins?" he replied, "I don't believe so."

As above stated, there was no substantial evidence to warrant a finding that the injury aggravated the varicosity of plaintiff's leg. At most the evidence shows that varicosity aggravates an injury and delays or retards its healing. Assuming that this is sufficient to bring the case within the rule of the case of *Nicholson* v. *Roundup Coal Min. Co.*, 79 Mont. 358, 257 Pac.

270, it does not aid plaintiff here, for the undisputed evidence shows that the injury was healed two months before the hearing before the board. No witness disputed that fact. It is true the record shows that there was an open sore on the leg at the time of the hearing before the board, but plaintiff's witness Moore was asked this question: "It is quite usual where you have extreme varicosity, like this man has apparently, to have open ulcers or open sores?" to which he replied, "Yes, you have those."

Dr. Gregg, a witness for defendant, also said: "Any varicosity as marked as he has tends to close and reopen, close and reopen, close and reopen, with or without injury." On this point there was no conflict in the evidence.

Since there is no substantial evidence supporting the finding of the court, the majority members of the court think the judgment should be reversed and the cause remanded, with direction to enter a judgment sustaining the decision of the board. It is the opinion of the writer, concurred in by Mr. Justice Ford, that the district court should remand the cause to the board for a further hearing, if plaintiff so desires, within the rule stated in *Inland Steel Co.* v. *Lambert,* 66 Ind. App. 246, 118 N. E. 162, and other cases to the same effect collected *pro* and *con* in Schneider on Workmen's Compensation Law, section 564.

Accordingly the judgment appealed from is reversed and the cause remanded, with direction to enter a judgment sustaining the decision of the board.

MR. JUSTICE FORD concurring.

MR. CHIEF JUSTICE CALLAWAY: We, the majority, concur in the result announced in the foregoing opinion, but we are not content to remain silent as to our reasons against a further hearing.

What was the issue for trial in the district court? Indubitably the same issue which was before the Industrial Accident Board, viz., the condition of the claimant's leg at the time the board rendered its decision. Waiving any discus-

sion as to the propriety of the court's action in receiving additional testimony, that relating to the leg showed it to be in better condition than it was when the board declared claimant no longer entitled to compensation. Claimant's own physician, Dr. James, whose testimony bears the stamp of honesty, testified that when he made his first examination (April 30, 1930), the condition of the leg was not such as to deter claimant from working. The doctor knew of the two-bit piece sized abrasion of the shin-bone by hearsay only, because the wound was healed before he ever saw the leg. At trial time in the district court the varicose condition of the leg was better, much better, than when the doctor first saw it. In fact, it was so good that it put no hindrance on claimant's return to work. The doctor then had many patients at work whose legs were affected to a greater degree of varicosity than was claimant's. But claimant refused, declined, to work.

Other physicians supported the testimony of Dr. James; indeed, the other physicians who testified weakened claimant's position. When the case came to the district court there came with it the presumption that the board had decided correctly. (*Morgan* v. *Butte Central M. & M. Co.*, 58 Mont. 633, 194 Pac. 496.) "All such orders, rules, and regulations, findings, decisions, and awards shall be conclusively presumed to be reasonable and lawful, until and unless they are modified or set aside by the board or upon review." (Sec. 2948, Rev. Codes 1921.)

This significant fact stands out: The evidence received by the court strengthened greatly the decision of the board. As is said in the foregoing opinion, the evidence before the board was ample to sustain its findings, and it is the unanimous judgment of the court that there is no substantial evidence supporting the findings of the district court, and the judgment must be reversed.

However, it is suggested that the district court should remand the case "for a further hearing, if plaintiff so desires, within the rules stated" in the authorities named. An examination of the authorities discloses that, by reason of

difference in the statutes upon which the cases referred to are based, none is in point, nor persuasive, here.

But upon the facts here, why should claimant have a further hearing? He does not ask it; he asks that the judgment of the district court be affirmed. The suggestion that in a case of this nature this court should order a further hearing is one that we think should not pass unnoticed, as we do not desire to be misunderstood by reason of silence. What is meant by a further hearing? Is it that the case shall be remanded to the district court or to the board to supply some deficiency in the evidence? Is it a new trial? If it is the latter, clearly our statute does not provide for it. A new trial at best is a somewhat cumbersome, technical and dilatory procedure. The intention of the legislature was to get away so far as practicable from the technical practice and procedure which under our present system needs must govern the operation of a court. The Industrial Accident Board is a layman's court. It is in a measure a *rusticum forum*, as Chancellor Kent dubbed a board of arbitration. The intention of the Act is to make practice and procedure before the board as simple as possible. The Act calls for the speedy adjustment of industrial accident cases, regardless of technical forms and requirements; the board makes its own rules, provides its own forms. (Sec. 2958.) After the board makes its order or decision, any party or parties aggrieved thereby may apply for a rehearing upon any of the six grounds stated in the statute. (Sec. 2955.) The contents of the application are provided in section 2957, and are very simple. The board is given full power and authority to make and prescribe rules to govern the procedure upon rehearing, "and any matter before it and any order made after such rehearing abrogating or changing the original order shall have the same force and effect as an original order, and shall not affect any right, or enforcement of any right, arising from or by virtue of the original order." (Sec. 2957.)

An appeal is allowed to the district court "for the purpose of having the lawfulness of the original order, decision, or

award, or the order, decision, or award on rehearing inquired into and determined." (Sec. 2959.) Upon the appeal the court shall determine either upon the record certified by the board, or upon that and such additional evidence as the court shall permit to be introduced for good cause shown, whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case. (Sec. 2960.)

"The board and each party to the action or proceeding before the board shall have the right to appear in the proceeding, and it shall be the duty of the board to so appear. If the court shall find from such trial, as aforesaid, that the findings and conclusions of the board are not in accordance with either the facts or the law, or that they ought to be other or different than those made by the board, or that any finding and conclusion, or any order, rule, or requirement of the board is unreasonable, the court shall set aside such finding, conclusion, order, judgment, decree, rule, or requirement of said board, or shall modify or change the same as law and justice shall require, and the court shall also make and enter any finding, conclusion, order or judgment that shall be required, or shall be legal and proper in the premises." (Sec. 2961.)

If the district court shall be of the opinion that further testimony should be admitted within the province of its inquiry, it may, for good cause shown, admit the same. The court must render its own judgment. (*Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880; *Kerns* v. *Anaconda Copper Min. Co.*, 87 Mont. 546, 289 Pac. 563; *Mulholland* v. *Butte & Superior Min. Co.*, 87 Mont. 561, 289 Pac. 574.) The district court upon appeal is given a broad discretion within the powers granted (*Dosen* v. *East Butte Copper Min. Co.*, supra); the provisions of the Act are to be given a liberal construction (sec. 2964). Under the guise of "liberal construction" we are not permitted to legislate. Nor have we any inclination to do so. We have not any disposition to add to nor detract from the procedural directions of the Act.

One step of that character inevitably leads to another. ██ Whether, being confronted with an extraordinary condition, factual or legal, this court may find it necessary and lawful in order to prevent a miscarriage of justice to direct the board to grant a further hearing of a cause, or upon some phase thereof, we need not now inquire, expressly reserving a decision upon the question. There is no miscarriage of justice in this case.

The claimant was represented at all times by experienced counsel. It is not to be supposed that he did not ask all questions he deemed it advisable to ask. Regardless of that, this court will not *sua sponte* pursue the unheard of course of suggesting questions which it thinks might be advantageous to one side or the other, and order a further hearing in order that such questions may be asked.

ASSOCIATE JUSTICES GALEN and MATTHEWS concur.

Rehearing denied March 8, 1932.