14898

JEFFERS v. MANETTA MILLS *ET AL.*

(3 S. E. (2d), 489)

*Mr. William Elliott, Jr.,* for appellants,

*Messrs. Hamilton, Gaston & Hamilton,* for respondent.

June 13, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This is an appeal from an order of the lower Court sustaining an award of the Industrial Commission, which in turn had approved the award made by the single Commissioner in favor of Mrs. Joe Jeffers and her four infant children, against Manetta Mills, employer, and American Mutual Liability Insurance Company, carrier. The award was made on account of the death of J. J. Jeffers, husband and father of the claimants, alleged to have resulted from an accident while he was employed and engaged in the service of Manetta Mills, in the early part of June, 1936.

The deceased, Joe Jeffers, for eight or ten years immediately preceding the alleged accident, had been employed by Manetta Mills as a machinist in its welding room. The latter part of May or the first part of June, 1936, it is alleged, he suffered a burn on the top of his left hand from a spark while using an acetylene torch. On the afternoon of the day of the accident, or the next morning, he came from the welding room and reported the accident to his foreman, Mr. Rush, and showed him the burn. The injury seemed trivial, and was not reported by foreman to the mill authorities, and it was not treated by a physician for seven or eight weeks. The deceased, however, upon going home, applied mercurochrome to the injury, and continued to so treat it, but the wound failed to permanently heal. It would heal superficially. He did not cease work, and while using the hand in the operation of an emery wheel, the skin would break loose, and grime and dirt would enter the open wound. After about seven weeks, when the injury had developed into an irritated sore, he consulted Dr. Gaston, his family physician, at Chester, who took him to Rock Hill, where Dr. Strait burned out the affected part with an electric needle. The doctors, however, were suspicious of malignancy, and sent a specimen of the tissue to Dr. Lynch in Charleston, who reported that the trouble was cancer. The affected spot was cauterized by Dr. Strait about August 10, 1936. After this operation the hand healed rapidly, and Jeffers returned to

his work at the mill, and continued working there for several months. However, before the end of the year the cancer had metastasized, affecting the upper arm, in consequence of which he died on the 11th day of December, 1937.

Appellants contend that the award of the Industrial Commission was based solely on hearsay evidence, uncorroborated by attending facts and circumstances. No claim is made that the alleged hearsay evidence should have been excluded. In fact, it was elicited by claimants and by appellants.

The burden rests upon the claimants to show by competent testimony, not only the fact of injury, but that it occurred in connection with the employment of the deceased; and to furnish evidence from which the inference can logically be drawn that the injury arose out of and in the course of the employment. The award, of course, must be based upon something more than surmise or conjecture. *Rudd v. Fairforest Finishing Co. et al.,* 189 S. C., 188, 200 S. E., 727.

It is also true that the proof of such facts may be established by circumstantial as well as by direct evidence. *Liquid Carbonic Co. v. Industrial Commission et al.,* 352 Ill., 405, 415, 186 N. E., 140, 87 A. L. R., 770; *Ohio Building Vault Co. v. Industrial Board,* 277 Ill., 96, 115 N. E., 149; *Demastes v. State Compensation Commissioner,* 112 W. Va., 498, 165 S. E., 667, 71 C. J., 1085. And where the circumstances surrounding the injury sustained by the deceased are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident, the evidence need not negative all other possible causes of death. Schneider, Workmen's Compensation Law, Vol. 1, page 1013.

There were no witnesses to the alleged accidental injury to the hand of the deceased, so that the physical facts and the justified inferences to be drawn therefrom must be considered as a determining factor in deciding

the issue. We are also warranted in considering the hearsay testimony adduced, the probative value of which was for the Industrial Commission. *Rice v. Brandon Corp. et al.,* 190 S. C., 229, 2 S. E. (2d), 740, opinion filed May 1, 1939.

The foreman, Rush, testified that the deceased came from the welding room and reported to him that he had suffered an accidental burn on his left hand from a blow torch spark; that he showed the red spot on his hand to him and to Telford, another employee, and that the witness knew that it was a burn, and stated that he himself had been burned several times from a spark under similar circumstances. He described the injured place as being "a little blister" on top of deceased's hand. Telford confirmed the statement that he was present when the deceased reported the alleged accident to the foreman and that he saw the hand. He said the spot was red, but that it did not look to him like a burn.

In addition to the testimony stated, it was proved that Jeffers was a strong, healthy man, 43 years of age, who had never missed a day's work on account of illness. That no one, not even those in daily association with him in the welding room, had ever seen any blemish or injury on his hand before the time of the alleged accident; that several days after the accident the injured place assumed the appearance of a blue wart, similar to a blood blister; and that by the time Dr. Gaston made his examination—seven weeks later—it had become an irritated sore, and proved to be malignant.

The medical testimony bearing upon the causal connection of the alleged burn with the cancerous condition is somewhat unsatisfactory, largely because of the fact that all of the doctors testified that they are practically helpless in the presence of cancer, and have no knowledge as to what might bring about the condition. They said that the cause of cancer is a matter of surmise and conjecture.

Dr. Gaston testified that in his opinion, from an examination of the sore on the hand of the deceased in August, 1936,

it evidently had its origin about June, 1936. He was asked this specific question: "Q. Say, he got burned in June, and after an interval until August, could this thing have occurred on there as a result of what he claimed got wrong with him in June? A. Evidently it started in June on his hand. He came to me in August for treatment."

Dr. Gaston further testified that at the time of his examination there was a tumefaction that was discharging, and that there was a sort of hollow, ulcerous condition in the skin. There was a growth more than an ulcer. And he further said that sometimes following a burn "you would have a granulation and some sort of growth, but this would be exceptional." He testified that some of the medical profession held to the view that a constant irritation of a wound would develop into cancer, but whether that view is correct or not he did not know.

Dr. Strait, who cauterized the sore, testified: "We see plenty of burns and bruises, and no cancer, but there is always a possibility it causes them. The cause of them is unknown, so one man's guess is as good as another's."

Dr. Ward expressed the belief that cancer is caused by an infection, but that the germ has not been discovered that produces the infection, and further, that such infection could get in a burn and cause cancer.

Dr. Abell testified, "I have seen burns cause an ulcer that was slow to heal and malignant change took place"; and that he would certainly be suspicious of an ulcer that failed to heal for several weeks. He said that the most general theory held by the profession as an explanation of most cancers is that of irritation.

Upon a consideration of all the testimony in this case, it seems to us not a question of surmise, but a question of inferences warranted by the evidence, whether the accident was established, and if so the causal connection between the burn and the cancer which later developed and caused the death of the deceased. All of the doctors testified that they

were given by the deceased the history of a burn on the hand, and without dissent they pronounced cancer as the cause of death.

Was there evidence which warranted the Industrial Commission in finding that the injury was caused by an accident arising out of and in the course of his employment?

The deceased worked in the welding room of the employer, and coming out of that room he exhibited to his foreman a red spot on the back of his hand, which the foreman said he knew from his experience to be a burn from an acetylene torch spark; that he himself had received injuries of a similar character from the same cause; and the testimony shows that not one of the fellow employees of the deceased, nor the mill officials, had ever before noticed any blemish on the hand of the deceased. And it is easily inferable from the medical testimony that the cancerous condition which later developed had a causal connection with this burn, although Dr. Gaston and Dr. Strait testified that the wound presented no appearance of a burn when they examined it, seven weeks after it was alleged to have been received.

In this case we have an unwitnessed accident. Therefore it was impossible to produce any one who actually saw it happen. If circumstantial evidence, however, is of any value, surely there was ample circumstantial evidence here, in addition to the hearsay testimony, tending to establish the fact of the accident. Furthermore, Dr. Gaston said that his fee for treating the hand was paid by Manetta Mills. This statement is contradicted by the mill, but its weight and credibility was for the Commission's determination.

The general rule, clearly to be adduced from the decisions in this type of case, is that if facts show a causal connection between the injury and the development of cancer, then the two cannot be separated, and the victim of the cancer, or his dependents, is entitled to com-

pensation. *Winchester Milling Corporation v. Sencindiver et al.,* 148 Va., 388, 138 S. E., 479, 483. As was said in the above case: "To this we may add that the courts have in general found no difficulty in cases similar to the one we are considering here, in applying the ordinary rules of evidence, and in drawing the ordinary conclusions of cause and effect from established facts, and we find none. This, we doubt not, courts will continue to do with a full sense of justification and without apology until the cause of cancer is definitely and scientifically established."

In our opinion, the judgment below should be affirmed.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE PHILIP H. STOLL concur.

MR. JUSTICE CARTER did not participate on account of illness.