BETTY LA FOREST, Plaintiff and Respondent, *v.* SAFE-
WAY STORES, INC., and TRAVELERS INSURANCE
COMPANY, Defendants and Appellants.

No. 11050.
Submitted March 9, 1966. Decided April 28, 1966.
Rehearing denied May 26, 1966.
414 P.2d 200.

Mr. Justice Hugh Adair and Justice John C. Harrison dis-
sented.

Poore, Poore, McKenzie & Roth, Butte, A. R. McKenzie (argued), Butte, for appellants.

N. A. Rotering (argued), Butte, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of Silver Bow County awarding compensation to the claimant at the rate of $40.00 per week for 300 weeks.

The parties to this action are Betty LaForest, hereinafter referred to as the claimant, Safeway Stores, Inc., a defendant, hereinafter referred to as Safeway, and Travelers Insurance Co., also a defendant, hereinafter referred to as the insurer.

The claimant filed a claim with the Industrial Accident Board of the State of Montana seeking compensation for an alleged injury incurred while in the employ of Safeway. Safeway was insured under plan 2 of the Workmen's Compensation Act of Montana by the insurer. The Industrial Accident Board after both a hearing and rehearing awarded compensation to the claimant. Safeway and the insurer appealed the Board's decision to the district court. A hearing was held at which additional testimony was taken, and this appeal was taken from the judgment entered by the district court.

The claimant was employed by Safeway as a food checker in June of 1960. Her duties as a checker were to take the grocery items from baskets used by customers and place them on the counter, to record the cost of each item on the cash register, and to sack or box the groceries.

In February of 1962, the claimant experienced pain in her left shoulder. She consulted Dr. Rosston who advised her that she had bursitis and treated her with cortisone. After two days she returned to Safeway where she worked regularly until October of 1962 when the pain returned to her arm. She was again treated with cortisone but missed approximately a week of work. Later in October of 1962, she was admitted to the hospital for three or four days. In November of the same year the claimant was again hospitalized as she continued to experi-

ence pain in her left shoulder. It was about this time that Dr. Rosston called into consultation Dr. Davidson, an orthopedic specialist, who performed an operation on the claimant's shoulder on December 9, 1962. She returned to work on February 28, 1963, and worked until March 18, of the same year.

The incident testified to by claimant upon which this claim for compensation is based occurred on March 14, 1963. The claimant, according to her uncorroborated version, was waiting on a customer who had a basket of groceries and canned goods to be checked out. She registered the items on the cash register tape, placed the groceries in a box and set the box on top of the shopping basket. The claimant estimated that the size of this box was 24 inches by 24 inches, and that with the groceries it weighed 90 pounds or better. She stated that the box was heavier than usual because she piled all the groceries in one box instead of using two boxes or two sacks. She further testified that when she lifted the box from the counter to place it on the basket she experienced pain in her left arm and shoulder. This occurred right at the claimant's lunch hour and she informed the store manager that she had hurt her arm lifting a box and was going to Dr. Davidson's office. Dr. Davidson treated her with cortisone. She returned to work that afternoon and continued to work through March 18, 1963. Since that time the claimant has undergone constant medical treatment and has never returned to her occupation.

The claimant received benefits in the amount of $45.00 a week under the group accident and sickness insurance provided by Safeway during the period of time she was off work from October, 1962, until February, 1963, and from March 18, 1963, until July 6, 1963. It is interesting to note that during the greater part of the period in which she received insurance payments, the claimant did not assert either any accident nor any injury. It was apparently only when her insurance payments had almost ran out that she filed an industrial accident claim on June 18, 1963.

The issues presented by this appeal are: whether the claimant sustained an injury within the meaning of section 92-418, R.C.M.1947, or specifically whether she suffered from an excluded disease not traceable to injury; and, whether the claim for compensation is barred by the provisions of section 92-807, R.C.M.1947.

It has been well-settled in this state that in appeals under the Workmen's Compensation Act the Supreme Court will affirm the findings of the Industrial Accident Board and the district court if there is sufficient evidence to sustain such findings. (Birnie v. United States Gypsum Co., 134 Mont. 39, 328 P.2d 133; Dean v. Anaconda Co., 135 Mont. 13, 335 P.2d 854; Bender v. Roundup Mining Co., 138 Mont. 306, 356 P.2d 469). However, in this case, after careful scrutiny of the record we find it does not contain sufficient evidence to sustain the findings of either the Industrial Accident Board or the district court.

Section 92-418, R.C.M.1947, provides:

" 'Injury' or 'injured' means a tangible happening of a traumatic nature from an unexpected cause, resulting in either external or internal physical harm, and such physical condition as a result therefrom and *excluding disease not traceable to injury.*" (Emphasis supplied.)

The evidence presented to the Industrial Accident Board and the district court is overwhelming in support of the conclusion that the claimant is suffering from a "disease not traceable to injury." An examination of the medical history of the claimant's shoulder reveals: that bursitis existed in her shoulder for over a year prior to March 14, 1963, the date of the alleged industrial accident, that it existed in her shoulder on March 14, and that she continued to suffer from bursitis subsequent to that date. A summary of the medical evidence contained therein is as follows: In February 1962, a medical doctor examined the claimant and diagnosed the difficulty in her left arm and shoulder to be bursitis. In October 1962, suc-

cessive examinations revealed the claimant was suffering from bursitis, inflammatory problems and calcified bursitis. On March 19, 1963, five days after the alleged accident, it was established that the claimant was suffering from chronic bursitis. X-rays taken on that date revealed calcification of the subdeltoid bursa. The calcium was removed from the bursa ten days later, March 29, by Dr. Davidson. He testified that the alleged accident of March 14 could not have led to the condition of the claimant's shoulder as it existed on March 29 because "the calcium could not form that rapidly."

The testimony of Dr. Davidson concerning the calcification of the bursa stands uncontradicted and therefore is accepted as true. His determination, that the calcium discovered in her shoulder on March 19 could not have formed since March 14, by itself, is sufficient to show the claimant was suffering from bursitis on March 14. However, in addition to Dr. Davidson's testimony is the fact that the claimant was found to be suffering from calcified bursitis as far back as October 1962.

The medical evidence, therefore, conclusively and unequivocally shows that the claimant was suffering from bursitis on March 14 and that this disease was not the result of the box lifting incident of the same date. This conclusion being firmly established the next question for our consideration is whether the claimant suffered any affliction on March 14 as a result of lifting the box of groceries.

The only remaining contention offered by the claimant is the possibility that she suffered a supraspinatus tendon tear. In support of this contention the claimant's medical witness, Dr. Rosston, read into evidence a letter from Dr. Campore of Chicago. Dr. Campore saw the claimant in March of 1965, two years after the date of the alleged injury. His letter to Dr. Rosston set forth the problems which, in his opinion, afflicted the claimant.

The district court permitted the letter to be read despite timely objection and erred in so ruling. This court stated

in Shillingstad v. Nelson, 141 Mont. 412, 378 P.2d 393, that unsworn medical reports are hearsay and inadmissible where no right to cross-examination is had. The contents of this letter should not have been considered by the district court, however, the fact is that with or without the letter the evidence is insufficient from the standpoint of establishing a causal connection between the Claimant's alleged accident on March 14, 1963, and her present condition. A review of the testimony of Dr. Rosston, in which he read the letter from Dr. Campore, indicates that Dr. Rosston felt that there was a possibility a supraspinatus tendon tear had resulted from the box lifting. He admits that at no time did he make a diagnosis of a supraspinatus tendon tear when he saw the claimant nor did he make a diagnosis of a supraspinatus tendon tear when he saw the claimant on March 17, 18 and 19, 1963, and in fact his notes show no such diagnosis at any time. Dr. Rosston further admitted that he was not in a position to disagree with the testimony of Dr. Davidson, the specialist in diseases and injuries of the joints. Dr. Davidson was the first physician to see the claimant following the alleged incident of March 14, 1963. He recorded no evidence of any such injury on that date and found no evidence of a tendon tear when he operated on March 29, 1963. His testimony in which he concluded that he ruled out entirely the possibility of a supraspinatus tendon tear is as follows:

"Q. Now, at the time that you operated on Betty La Forest, on March 29, 1963, did you examine for the possibility of the existence of a supraspinatus tendon tear? A. I examined the shoulder quite thoroughly because I had difficulty finding the bursa. These aren't very big and the shoulder has to be rotated in various directions so that the bursa can be found; and I did check quite thoroughly, and at the time I could see no evidence of a tear. If I had seen one, I would have gone ahead and repaired the tear while I had the shoulder open.

"Q. Now, would it be possible to have a supraspinatus ten-

don tear present there without you finding it? A. That is possible.

"Q. That would be very possible, would it not, in that type of— A. Not 'very possible'.

"Q. But it would be possible? A. It would be possible.

"Q. And, as a matter of fact, from your surgery and your examination, you didn't entirely rule out the possibility of a supraspinatus tendon tear, did you? A. I did; or I would have done something about it."

We will agree that even after a thorough examination of the shoulder, during an operation, which revealed no evidence of a supraspinatus tendon tear, a "possibility" still remains that such a tear exists. However, the above-quoted expert testimony establishes a far greater probability of the absence of such a tear. The claimant has the burden to establish by a preponderance of the evidence that her condition resulted from an injury and not from a disease. (Newman v. Kamp, 140 Mont. 487, 374 P.2d 100.) She has not sustained the burden of proof. Not only does a fair reading of the medical evidence preponderate against the claimant, there is no substantial credible medical testimony to the contrary. By adroit questioning, claimant's counsel was able to get Dr. Davidson to admit to a "possibility" of a supraspinatus tendon tear. However, such a "possibility" is not probative credible testimony and will not, without more, supply evidence.

It is our conclusion that the claimant's disability is the result of a "disease not traceable to injury" and therefore not a compensable "injury" within the meaning of section 92-418.

Since there is no compensable injury it is not necessary for us to determine if the notice provisions of section 92-807 were complied with.

However, in passing we note that no report of the alleged accident or injury was made, and even the doctors involved in the treatment were not aware of an alleged injury or accident until June 18, 1963.

The judgment is reversed and the cause dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES concur .

MR. JUSTICE ADAIR dissenting:

I dissent. In my opinion the judgment rendered by District Judge Paul G. Hatfield in this cause was correct, just and fully sustained by ample substantial evidence. Such judgment so given by Judge Hatfield in favor of the claimant, Betty La Forest should be affirmed.

MR. JUSTICE JOHN C. HARRISON, dissenting:

I dissent.