PETE STORDAHL, Claimant-Respondent, *v.* RUSH IM-
PLEMENT COMPANY, Employer, and Glacier General
Assurance Company, Defendants-Appellants.

No. 11043.
Submitted May 2, 1966. Decided July 13, 1966.
Rehearing denied August 18, 1966.
417 P.2d 95.

14

Erwin L. Anzjon (argued), Missoula, for appellants.

Joseph P. Hennessey (argued), Billings, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment given the respondent by the trial court, sitting without a jury, in the Thirteenth Judicial District for the County of Yellowstone.

The original claimant, Stordahl, was employed by the Rush Implement Company, and the employer had elected to come under Plan Two of the Montana Industrial Accident Board. The employee was insured by the Glacier General Assurance Company.

We shall refer to claimant as such, even though he is now deceased as will appear.

Claimant on June 18, 1963, was seated tightening bolts on a grain swather, when someone tripped the hydraulic mechanism on the header of the machine. The header fell striking claimant in the back, causing a compression fracture of Dorsal 11 and 12, the two lowest vertebrae of the dorsal spine.

Claimant was hospitalized, treated and released from the hospital on July 5, 1963.

On August 12, 1963, he was re-admitted to the hospital and after comprehensive examinations and tests, the claimant failed to respond. Claimant continued to be hospitalized and diagnostic studies made after August 12 revealed that claimant was experiencing difficulty with his bladder and legs. There was

further exploratory surgery in the area of the fracture which revealed nothing significant, and claimant became a paraplegic.

On September 20, 1963, a myelogram was performed which disclosed a blockage in the spinal canal at D-2 . After further exploration a malignant tumor was discovered at D-2 by the pathologist and the attending physician an orthopedic surgeon. The distance between the fracture of June 18 and tumor was five to six inches.

Both doctors testified at the Industrial Accident Board hearing that in their opinion the tumor was present prior to the accident, and that the disc surgery performed in early August neither hastened nor aggravated the tumor.

On January 16, 1964, the insurer filed a petition with the Industrial Accident Board to determine its liability for compensation and medical treatment. This hearing was had on February 26, 1964.

The claimant died on February 4, 1964, and no autopsy was requested by claimant's family as to the cause of death. Section 69-2308, R.C.M.1947, is highly restrictive as to authority for performing an autopsy. In this cause, such authorization could only be given by the wife of the claimant.

On March 16, 1964, the hearing officer for the Industrial Accident Board ruled that the claimant had been paid legal compensation from June 18, 1963, to the date of death, February 4, 1964, this payment being for the fracture incurred as the result of an industrial accident; that the claimant died as the result of a tumor on his spine on February 4, 1964; that the undisputed medical evidences failed to show any causal relationship as between the accidental injury and the cancerous tumor and that further benefits were denied.

A rehearing was granted and held by the Industrial Accident Board on September 24, 1964, at Billings where additional testimony was given by the claimant. On November 16, 1964, the commission again denied further payments to claimant stating in its opinion, in part, "We reason that the area of

actual injury, which resulted in claimant's hospitalization, was some distance removed from the site of the cancer later discovered. The application of Ewing's postulates leaves us with insufficient evidence as to the identity of the area of trauma. Had the fracture been at the site of the tumor there would be some grounds to conclude that the trauma could have influenced its growth or perhaps caused it. The evidence seems to the Board to support a conclusion that the cancerous growth, and the fracture were coincidental. It is our view that the new evidence introduced at the rehearing did not sufficiently change the whole body of facts to justify reversal of the previous findings and order made."

Claimant introduced into evidence over appellant's objection an article by Dr. R. H. Rigdon of the Pathology Department of the University of Texas medical branch, written in 1957. This article defines the Ewing postulates here for accepting trauma as a cause of cancer:

(1)  The authenticity and sufficient severity of the trauma.

(2)  Previous integrity of the wounded part.

(3)  The identity of the injured area with that giving origin to the tumor; a blow in one part of the body *cannot be made* the cause of a tumor arising in another part.

(4)  The tumor must be of the type that could conceivably result from trauma.

(5)  There must be a proper time interval between the receipt of the injury and the appearance of the tumor. (Emphasis added.)

The claimant's tumor appeared some six inches from the trauma, hence it fails to meet the third postulate of Ewing.

Thereafter, on March 22, 1965, this cause was heard on appeal by the claimant before the Honorable Guy C. Derry, who on July 30, 1965, reversed the findings of the Board and awarded claimant's estate 500 weeks or total compensation. Judge Derry wrote a lengthy memorandum which recited the facts, as he viewed them, together with the pertinent case law.

At this hearing before Judge Derry one further witness testified over objection of the appellant carrier. The testimony of this witness was of no significance as it pertained to hospital and doctor bills only. It was this testimony cited by the appellant as the seventh specification of error.

Appellant cites six other specifications of error. The six specifications are commingled with the single question, "Was the District Court correct in reversing the Industrial Accident Board, on the evidence adduced at the three hearings?"

The posed question leads us to the applicable statute which is section 92-418, R.C.M.1947, and reads as follows:

*"Injury or injured defined.* 'Injury' or 'injured' means a tangible happening of a traumatic nature from an unexpected cause, resulting in either external or internal physical harm, and such physical condition as a result therefrom and *excluding disease not traceable to injury."*

We take cognizance of a sentence in the trial court's long memorandum which states, "In view of the fact that two members of the Board who signed the decision never heard any of the testimony and the Chairman of the Board never heard the main portion of the evidence, it seems that the trial court on the appeal is in as good a position to evaluate the evidence from the cold record as the Board."

With this statement we cannot agree. This court in Moffett v. Bozeman Canning Co., 95 Mont. 347, 351, 26 P.2d 973, 974, stated the rule: "The case came to the district court with the presumption that the board had decided correctly. Rom v. Republic Coal Co., 94 Mont. 250, 22 P.2d 161; Radonich v. Anaconda Copper Min. Co., 91 Mont. 437, 8 P.2d 658. The district court on appeal from the board is not justified in reversing a finding of the board unless the evidence clearly preponderates against such finding. Rom v. Republic Coal Co., 94 Mont. 250, 22 P.2d 161; Morgan v. Butte Central M. & M. Co., 58 Mont. 633, 194 P. 496.

"If in the present case it does not appear that the evidence

clearly preponderates against the findings of the board, the judgment of the court reversing the order of the board must in turn be here reversed, and the decision of the board dismissing the application must stand."

In the recent case of Lupien v. Montana Record Publishing Co., 143 Mont. 415, 420, 390 P.2d 455, 458, this court recognized the foregoing rule when it stated:

"At this point, too, we have not discussed the propriety of the district court reversing the findings of the Board. But see Moffett v. Bozeman Canning Co., 95 Mont. 347, 26 P.2d 973."

We have diligently examined the record in this cause and conclude that the Board, in the exercise of its long established prerogative to determine credibility and conflicts of proof was amply warranted in resolving the issue as it did.

The Board's finding of a lack of causal relationship between the fracture and the tumor that caused death was based on substantial affirmative evidence devoid of conjecture and speculation. The fracture and tumor were co-incidental which was strongly fortified by competent expert testimony.

Testimony of Dr. Edwin C. Segard, a pathologist who made the pathological determination on both the claimant's first and second operations, stated with certainty that a single trauma (wound) would not cause cancer. The doctor further stated: "I think that in our present state of knowledge or ignorance we have fairly abundant evidence to indicate that malignant tumors are present for a considerable period of time before they become clinically evident, and this period of time is probably measurable in years. We know this to be certain in many malignant tumors, particularly the leukemias, the carcinomas, where these lesions are present for years before they become clinically evident, and I think that it's probably justifiable to state that nearly or most malignant tumors are in a dormant state for a considerable period of time, probably years before they become clinically manifest."

Dr. Walter H. Hagen, a qualified orthopedic surgeon who performed the surgical operations on the claimant, was asked this question:

"Q. Do you believe, Doctor, that the accident of June 18th caused the cancer which was discovered? A. I do not.

"Q. Do you think that the accident of June 18th, 1963, contributed to his demise? A. I do not."

Dr. Robert J. Hill testified for the claimant as a general practitioner, who stated that he had read the testimony of Drs. Segard and Hagen and in reply to a hypothetical question by claimant's attorney testified that the most possible and probable cause of death of the claimant was the trauma that triggered the cancer.

General expression of opinion in relation to cause and effect are permitted to a medical witness *only* where they are directed to showing that the condition of the claimant was such as to indicate that it was occasioned by the injury claimed. LaForest v. Safeway Stores, Inc. and Travelers Insurance Company, 147 Mont. 431, 414 P.2d 200, decided April 28, 1966.

Not every supposition or theory of a witness concerning *what might be* has the force of evidence, even though he be licensed to practice medicine. The utter absence of statistical data and absence of scientific understanding when compared to authoritative data such as the Ewing postulates minimizes such testimony. There is no present rule to hold doctors to strictness in testifying that was once required provided it can be determined that their testimony encompasses a reasonable degree of medical certainty. The form of the answers is far less important than the context and circumstances. There always should be, however, some positive pertinent evidence of a basis for the opinion. The marked propensity of recent years of resorting to the acceptance in one case of the "possible" as meaning reasonable medical certainty cannot be countenanced as treating every "possibility" as adequate to establish the fact sought to be proved. Everything in this troubled

world is "possible" and this is particularly true in the scientific world.

The writer has read many cases where symptoms of aggravation of the cancer were claimed as the result of trauma in the site of the malignancy, and many of these cases were decided for the claimant, based on the traumatic injury as a substitute for scientific evidence or a proven knowledge of cause and effect. Compare: Santa Ana Sugar Co. v. Industrial Accident Comm., 35 Cal.App. 652, 170 P. 630; Canon Reliance Coal Co. v. Industrial Commission of Colorado, 72 Colo. 477, 211 P. 868; King v. Munising Paper Co., 224 Mich. 691, 195 N.W. 812; Winchester Milling Corp. v. Sencindiver, 148 Va. 388, 138 S.E. 479, and Industrial Commission of Colorado v. Corwin Hospital, 126 Colo. 358, 250 P.2d 135.

Whenever a medical expert testifies that an asserted cause of disease is *possible,* this alone is not to be accepted as reasonable medical proof. Causes of cancer are unknown to science and if this trend continues, everyone unfortunate enough to be afflicted with this deadly killer could secure medical testimony, electing the best incident that the disease was contracted from any of many different traumas and exposures that would sustain a holding of liability of some responsible defendant.

It is not the intent of the law that the less known of any disease the greater the "possibility" of a favorable judgment in court. The reasonable and normal rule must be maintained, that is that the party asserting the claim has the burden of proving causation under our statute.

Having examined all the testimony offered before the Board and the district court, we find that the evidence did not preponderate against the Board's findings, and that there was not sufficient credible evidence preponderating against the Board's findings to overcome the presumption that the Board had decided correctly.

. Accordingly the judgment is reversed and the cause dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and CASTLES concur.

MR. JUSTICE ADAIR dissenting:

I dissent. This appeal is most similar to the appeal to this Court in Lupien v. Montana Record Publishing Co., 143 Mont. 415, 390 P.2d 455, wherein District Judge Lester H. Loble rendered judgment holding that Garnett M. Lupien, the widow of the deceased workman, was entitled to have and receive the workman's compensation for which she applied and reversed the Industrial Accident Board, which prior to Judge Loble's ruling had ruled that the widow was not entitled to compensation. The view I there took was that Judge Loble's judgment was correct and that it should be affirmed, and I so stated in my dissenting Opinion to this court's ruling in the Lupien case.

In the instant case of Stordahl v. Rush Implement Co., District Judge Guy C. Derry reversed the Industrial Accident Board's prior ruling and ruled that the beneficiaries of Pete Stordahl, the insured workman, who died on February 4, 1964, were entitled to the full period of 500 weeks of compensation in accordance with the Workmen's Compensation Act of the State of Montana.

In my opinion the judgment so rendered by Judge Derry in favor of the beneficiaries of Pete Stordahl, deceased, was correct and it should be affirmed.