CHARLESTON SHIPYARDS, Inc., and American Casualty Company of Reading, Pennsylvania, Appellants,

v.

Richard P. LAWSON, Deputy Commissioner, Department of Labor, Bureau of Employees' Compensation Sixth Compensation District, and Hamp Huery, Appellees.

No. 7062.

United States Court of Appeals Fourth Circuit.

Argued Oct. 19, 1955.

Decided Nov. 10, 1955.

Augustine T. Smythe, Jr., and Robert McC. Figg, Jr., Charleston, S. C., for appellants.

John J. Cound, Attorney, Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., and Samuel D. Slade, Attorney, Dept. of Justice, Washington, D. C., on brief), for Deputy Commissioner Lawson, appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and BRYAN, District Judge.

DOBIE, Circuit Judge.

This is an appeal from an order entered by the United States District Court for the Eastern District of South Carolina, which affirmed an award by Richard P. Lawson, Deputy Commissioner, Department of Labor, on behalf of Hamp Huery, against Charleston Shipyards, Inc., (hereinafter referred to as Shipyards) and its insurance carrier, American Casualty Company, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The suit was commenced as a civil action by Shipyards and its insurance carrier under 33 U.S.C.A. § 921(b) against the Deputy Commissioner and Huery to set aside the award, certain findings of fact upon which the award was based, and to enjoin the enforcement of the award.

This appeal by Shipyards and its insurance carrier presents but one question: were the findings of the Deputy Commissioner supported by substantial evidence on the record considered as a whole? We hold that they were, and the judgment of the District Court is affirmed.

The evidence in this case discloses that on January 18, 1952, Huery was engaged in the employment of Shipyards aboard a vessel in the Cooper River, a navigable waterway of the United States. While carrying two buckets of grease in the engine room, Huery stumbled over some steel and stepped heavily on a piece of steel which penetrated the shoe on his right foot and injured the plantar surface of that foot. Huery, a man about forty-six at that time, had on that part of his foot a wart-like lesion, which had been present from birth or early childhood, but had never given him any trouble or pain or interfered with his work. This lesion was injured, however, by the steel which had pierced Huery's shoe, and Huery had found blood coming from the injury. He told his supervisor of the injury and on January 21, Shipyards' personnel office arranged for the claimant to see Dr. Paulling, an orthopedic surgeon.

On January 23, Dr. Paulling examined Huery's foot for the first time. He found on the sole of Huery's right foot, in the instep just in front of the heel, a large horny, wart-like lesion, the central portion of which was raised a quarter of an inch above the surrounding tissue and was deeply pigmented. The lesion was separated from the surrounding area by a fissure as if the central portion had been pulled or torn. Serous fluid was oozing from the fissure but it appeared to Dr. Paulling that there had simply been a minor trauma to this wart. He instructed Huery to stay off the foot, use hot soaks, and return in several days. On January 28, 1952, Huery returned to Dr. Paulling's office. The doctor discovered that the foot was then more painful, the amount of drainage had increased, and there was definite, peculiar odor like that of necrotic or dead tissue. Dr. Paulling, now recognizing that the lesion was potentially dangerous, was alarmed; he excised the central portion of the lesion and sent it to a pathological laboratory for study. He was informed that this examination revealed a malignant melanoma—a malignant tumor that often metastasizes rather early. He therefore referred Huery to Dr. Hawk, the Director of the Cancer Clinic at the Medical College of South Carolina. Huery was examined at the clinic on February 1, 1952, and was presented to the surgical staff on February 2. It was the opinion of the surgical staff and the attending surgeons that a hemipelvectomy—the amputation of the entire right leg and the right half of the pelvis—was necessary. This operation was performed on February 4, 1952.

After hearings on Huery's claim for compensation, the Deputy Commissioner found that Huery's injury of January 18, 1952, had played a definite part in the development of the malignant melanoma in that it had activated and accelerated a preexisting lesion or benign nevus, and that the injury had necessitated and resulted in the hemipelvectomy, which he found was a necessary surgical procedure required by the presence of

the melanoma. He found further that as a result of the injury, Huery had been totally disabled, left without capacity to earn wages after January 28, 1952, and he directed that compensation of $20.00 per week be paid to Huery beginning as of that date and continuing as long as total disability prevails.

Shipyards and its insurance carrier contended that the evidence before the Deputy Commissioner failed to establish the requisite causal connection between the employment and the disability for which compensation was awarded; and that the Deputy Commissioner's findings, (a) that the wart-like lesion in question was a benign nevus at the time of the accident and injury, (b) that the injury played a definite part in the development of the malignant melanoma which necessitated the amputation by activating and accelerating such benign nevus, and (c) that hence Huery's total disability from January 28, 1952, was a result of the injury, were not supported by substantial evidence on the record considered as a whole.

The District Judge, after hearing the matter, concluded:

"It is quite clear to me after a review of the entire record that the findings of the Commissioner on the whole are *consistent* and *credible*. I think from the testimony of the doctors and others evidence which was presented, the Deputy Commissioner could *rationally infer* that the injury to Hamp Huery's foot while he was engaged in the work of his employer necessitated the amputation of his leg."

With this statement we agree and conclude that the award made by the Deputy Commissioner was correct.

We advert briefly to the evidence considered by the Deputy Commissioner. Dr. Hawk testified:

"It has been recognized that trauma does play a part in the development of malignant lesions, and this is particularly true of malignant melanomas. Almost all cases of melanoma will give a history of some form of injury or chronic irritation to a preexisting lesion. The direct effect is difficult to prove except by inference."

He further stated that any injury may materially affect a melanoma or aggravate a benign nevus or make it turn malignant; but he could not answer "one way or the other" whether the development of this melanoma was due to the injury.

Dr. Paulling testified that "trauma does play a part in activating a preexisting benign lesion," which he defined as "any type of abnormal process." The Deputy Commissioner further considered Huery's testimony, that he had had this wart-like lesion since childhood and that it had never given him any trouble. A melanoma was present within the lesion in Huery's foot within ten days after his injury. The only proved injury or irritation to that lesion was the injury of January 18, 1952; any prior injury or irritation was contra-indicated. There was other evidence, the drastic change in Huery's wound during the period between his first and second visit to Dr. Paulling, all tending to support the Deputy Commissioner's findings.

The scope of permissible review in matters arising under the Longshoremen's and Harbor Workers' Compensation Act is established by the Administrative Procedure Act, 5 U.S.C. § 1001 et seq. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Colonna's Shipyard, Inc., v. O'Hearne, 4 Cir., 200 F.2d 220. From these authorities it is clear that where, on the record considered as a whole, there is substantial evidence to support the administrative findings of facts, they are to be accepted and given effect by the courts.

The crux of Shipyards' argument is that the testimony of the doctors did not support the Deputy Commissioner's findings and conclusions, claiming that the doctors declined to lend the support of their sworn professional opinions to the Deputy Commissioner's conclusions as

being either correct or probable. In fact, Shipyards asserted that upon repeated questioning on the issue, the doctors said they did not know and left the issue in the realm of mere possibilities and conjecture, so far as their evidence was concerned.

In Hampton Roads Stevedoring Corp. v. O'Hearne, 4 Cir., 184 F.2d 76, at page 78, our Court, in referring to the role of medical testimony in such compensation awards, stated in approving an award where there was "no positive expert medical testimony to establish the finding that the injury caused the death" that "such is not required by the law." Further, "where there is medical opinion that the death is not related to the injury, the circumstances may outweigh the physician's express opinion." Despite Shipyards' concern with the use of words, whether certain things were 'possible' or 'probable', this Court is fully aware that, in the field of cancer and its causation in a given case, the medical profession necessarily has difficulty in making positive assertions and will continue to do so until the cause of cancer is definitely and scientifically established. See, to like effect, Winchester Milling Corp. v. Sencindiver, 148 Va. 388, 399, 138 S.E. 479, 483. In cases involving cancer, several states, including South Carolina, have held that the findings of causation in compensation awards were supported by substantial evidence notwithstanding the fact that the only medical testimony in claimant's favor was uncertain. Jeffers v. Manetta Mills, 190 S.C. 435, 3 S.E.2d 489; Blackfoot Coal & Land Corp. v. Cooper, 121 Ind. App. 313, 95 N.E.2d 639.

It must be remembered that the resolution of factual controversies in Longshoremen's and Harbor Workers' Compensation Act cases is the primary responsibility of the Deputy Commissioner. If, viewing the record as a whole, there is substantial evidence for his findings, they cannot be set aside even though the court might disagree with them, O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470,

95 L.Ed. 483, and this rule extends not only to the facts which the Deputy Commissioner may find but also to the inferences which he may draw from them. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 507, 71 S.Ct. 470; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229. If there is any doubt whether the findings and the inferences of the Deputy Commissioner are supported, that doubt must be resolved in his favor. Southern Stevedoring Co., Inc., v. Henderson, 5 Cir., 175 F.2d 863.

In the instant case, there is much evidence which affirmatively supports the finding that Huery's disability resulted from the injury which he received while in Shipyards' employment, little or none to disprove this conclusion. The findings of the Deputy Commissioner were reasonable in the light of the evidence and should be upheld. The judgment of the District Court is affirmed.

Affirmed.