McCoy *v.* Cornish Lumber Co.

April 5, 1954

No. 39094          59 Adv. S. 26          71 So. 2d 304

*Nate S. Williamson, Lester F. Williamson, Donald W. Williamson,* Meridian; *Morse & Morse,* Poplarville, for appellant.

*Lyle V. Corey, Snow & Covington,* Meridian, for appellee.

ETHRIDGE, J.

The issue is whether appellee, an employer, failed to secure the payment of workmen's compensation to his employee, appellant's intestate, at the time of injury. We hold that appellee failed to comply with this requirement of the act, and that appellant therefore has a right to bring this suit at law for damages.

Appellant, Floyd McCoy, in his own behalf and for the use and benefit of his wife and children, brought this suit in the Circuit Court of Lauderdale County against W. H. Cornish, doing business as Cornish Lumber Company, appellee, asking damages for the death of appellant's son, Frank McCoy, Jr. The declaration alleged that appellee in his business employed more than eight regular workmen or employees and he was required by the Mississippi Workmen's Compensation Act to carry workmen's compensation insurance, but that he had failed to secure the payment of compensation to his employees; and that in accordance with the election allowed appellant by Section 5 of the Act, appellant was suing at common law for damages resulting from appellee's alleged negligence. The declaration charged that on October 29, 1952, Frank McCoy, Jr. was an employee of appellee and was riding upon appellee's truck, which appellee knew was in a dangerous and defective mechanical condition; that the gas tank was in such defective condition that the gasoline leaked out of it and as a result thereof the truck caught on fire and burned appellant's son, which burns resulted in his death and were received within the scope and course of his employment; that appellee knew, or by

the exercise of reasonable care, should have known of this dangerous and defective condition.

The defendant's answer incorporated in it two special pleas: (1) Under Section 5 of the Workmen's Compensation Act, the exclusive remedy of plaintiff is under that act, of which plaintiff elected to take the benefits by presenting to and accepting the payment by defendant of the funeral bill of Frank McCoy, Jr.; and defendant has at all times and now stands ready to fulfill his obligations under the act. (2) Plaintiff's exclusive remedy is under the compensation statute. Defendant qualified as an employer under the act by procuring in May, 1952, a compensation insurance policy and filing it with the commission. The insurance company later attempted to cancel the policy, but defendant had by such actions elected to settle claims under the compensation act. These pleas incorporated in them a motion to dismiss the suit. Plaintiff filed a replication, denying that defendant had secured the payment of compensation as required by the act, and averring that the defendant's insurance was cancelled in September, 1952, and that he did not secure any other coverage until November, 1952, after the death of Frank McCoy, Jr.

In the hearing on appellee's special defenses, Cornish admitted that he employed around 38 persons and that he was subject to the provisions of the Workmen's Compensation Act. Deceased was his employee, and his injuries and death arose out of and in the course of his employment. In May, 1952, appellee purchased a compensation insurance policy from Employees' Mutual of Warsaw, but in September, 1952, that insurance carrier cancelled its policy. Cornish testified that he then "called several others, finally got insurance after this accident happened" with another company, which in turn cancelled its policy on his operations on April 6, 1953. The compensation policy which appellee purchased in May, 1952, would have been in effect when appellant's

son was killed if the carrier had not cancelled it a month before. Appellee had paid his premium on the Employees' Mutual policy and had filed notice of it with the Workmen's Compensation Commission. He said that he was proceeding on the same basis as though he had a policy, even though Employees' Mutual had cancelled its coverage. Cornish testified that he was paying other workmen injured on their jobs the same benefits as those provided by the compensation act, and that the other man who was injured on the same occasion had been paid standard compensation benefits. He stated that appellant brought him the deceased's funeral bill, which he paid directly to the funeral home; that appellant and his wife went to the office of appellant's lawyer, Lyle Corey, who advised them what they were entitled to under the act, but appellant told Corey that he was not ready to settle the claim yet. Appellee admitted that after his compensation policy with Employees' Mutual was cancelled in September, 1952, he did not obtain and file with the commission another policy until November, 1952, after the accident. He also admitted that during that time he did not apply to the commission to qualify as a self-insuror, and that the commission did not grant him an exemption. Appellee does not claim that he applied for an assigned risk policy. He said that he tried with several different companies to get insurance and was turned down, but that he finally obtained a compensation policy in November, 1952. He admitted that he did not have an insurance policy in effect between September and November, 1952 and he knew then that he did not have it.

Cornish never did advise appellant how much he would be willing to pay and there was no agreement as to any amount. Cornish advised appellant that he did not have compensation insurance, but that he would do all that the compensation law required, and that he was ready, able and willing to comply with that act.

There was introduced into the record a letter from the Workmen's Compensation Commission stating that Cornish's coverage was cancelled in September, 1952, and that he did not secure any other coverage until November, 1952, and an affidavit by the secretary of the commission stating that the commission's records reflect that appellee had not secured compensation insurance coverage on October 29, 1952.

The trial court stated that it "believes that the workmen's compensation act applies in this case and that the plaintiff does not have the right at this time to proceed under a common law action for negligence." The final order adjudicated that appellee's special defenses "are in complete bar of the cause of action," that appellee had secured compensation coverage under the act "to the extent and under such circumstances that the remedy of the plaintiff" is under the compensation act exclusively, and that the present suit at law for damages for negligence is not permissible. Hence the circuit court dismissed appellant's suit.

Appellant argues that the lower court was in error because under Section 5 of the Workmen's Compensation Act, being Code of 1942, Section 6998-05, appellee had failed to secure payment of compensation, and, therefore, appellant had an option to sue at law for damages. This statute provides as follows:

"Exclusiveness of liability.—The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this act,

or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.''

On the other hand, appellee contends that he complied with Section 5 when in May, 1952, he secured a compensation insurance policy with Employees' Mutual, made application to the commission, and filed the policy with it. This policy was not cancelled at his request nor by his consent, and if there had been no cancellation, its term would have extended past the date of the accident. Appellee had thereby elected to operate under the act, he says, and the cancellation of the policy did not affect his status as being under it. Immediately when appellee was advised of the cancellation, he attempted to obtain another policy and had difficulty doing so, but within a little over thirty days from its cancellation he got one. Appellee says that he at all times acted in good faith, which is the criterion, and that an employer should have a reasonable period within which to find another insurance carrier; nor did the commission offer to assign appellee's risk. In brief, appellee's argument is that he at all times acted in good faith, that in May, 1952, he assumed the status of an employer covered and protected by the act, and that under the circumstances the slightly more than thirty-days interval during which he had no compensation insurance was not an unreasonable period of lapsed coverage.

The Workmen's Compensation Act does not make good faith the test in determining whether an employee can sue at common law. Section 5 states that ''if an employer fails to secure payment of compensation as required by this act,'' the employee may elect to maintain an action at law for damages. The undisputed facts are

that appellee had no compensation insurance when the accident occurred, and had had none for almost a month. Nor does appellee claim that he applied to the commission for a policy under the assigned risk plan, as provided in Code Section 6998-56 and Rule 6 of the commission, nor that he obtained such a policy. And he did not attempt to qualify as a self-insurer under Section 6998-38, and Rule 7 of the commission.

Code Section 6998-39, implemented by commission Rule 5, provides in part: ". . . No such policy shall be cancelled within the policy period until a notice in writing shall be given to the commission and to the assured, fixing the date on which it is proposed to cancel it, or declaring that the company does not intend to renew the policy upon expiration date, such notices to be served personally or by registered mail on the commission at its office in Jackson, and upon the assured. No such cancellation shall be effective until thirty (30) days after the service of such notice, unless the employer has obtained other insurance coverage, in which case such policy shall be deemed cancelled as of the effective date of such other insurance, whether or not such notice has been given."

In other words, an insurance carrier cannot effectively cancel a compensation policy until thirty days after the serving of notice in writing on the commission and the assured. This provision creates a reasonable period within which the employer can obtain other insurance, particularly when considered in the light of the availability under the act of the self-insurer and the assigned risk plans. Nor does appellee make any claim that Employees' Mutual failed to give him proper notice of the intent to cancel its policy. In the absence of such evidence, we must assume that Section 6998-39 was complied with, and if that be true, more than sixty days from the time of notice transpired before appellee obtained another insurance policy, and during this period he did

not attempt to qualify as a self-insurer, and did not obtain a compensation policy under the assigned risk plan.

The condition provided by Section 5 of the act as a condition precedent to a suit at law, the failure of the employer to secure payment of compensation as required by the act, is plain and unambiguous. It is entirely reasonable when considered in the light of other relevant provisions of the statute as discussed above. ██ The requirement that the employer must secure payment of compensation means that he must have in effect an insurance policy complying with the workmen's compensation act, or must qualify as a self-insurer. See also Section 3 of the act which permits exempted employers to come under it "by insuring," posting notice, and notifying the commission. An exercise of the right to bring a suit at law for failure of an employer to so secure payment of compensation has been uniformly upheld. 58 Am. Jur., Workmen's Compensation, Sec. 55; 71 C. J., Workmen's Compensation, Sec. 1503; 1 Schneider, Workmen's Compensation (3rd Ed. 1941), Sec. 92, p. 231; 2 Larson, Workmen's Compensation Law (1952), p. 443-448, 146-152; Horovitz, Workmen's Compensation (1944), p. 318-319; Anno., 21 A. L. R. 1428; Anno., 117 A. L. R. 515.

In Talge Mahogany Co. v. Burrows, 191 Ind. 167, 130 N. E. 865 (1921), an employer who had purchased compensation insurance under the act, but had allowed the insurance which it had procured to lapse and terminate, and had not filed an application for permission to carry its own insurance, was held subject to an action at law for damages for an injury to an employee. In Coffin v. Bloodworth, 82 P. 2d 953 (Calif. App. 1938), it was held that an employer who failed to secure insurance or commission consent to self-insure was subject to a suit for damages sustained by the employee, although the employer had paid the employee's medical bills and wages during disability. The California Act contained a phrase

similar to that in the Mississippi Act, "secure the payment of compensation." Compare Akin v. Shelton, 175 Okla. 536, 53 Pac. 2d 661 (1936); Samuels v. Munson Steamship Line, 63 F. 2d 861 (C. C. A. 5th, 1933); Stanton v. Ruthbell Coal Co., 34 S. E. 2d 257 (W. Va. 1945); Jones v. Brink, 39 So. 2d 791 (Fla. 1949); Schneider, Some Practicable Problems Under the Mississippi Workmen's Compensation Act, 20 Miss. L. J. 154, 160 (1949).

The test is not whether the employer is willing and able to pay compensation under the act, but whether he has complied with Section 5 by in fact securing payment of compensation in one of the permissible methods under the act. The word "secure" in Section 5 has a considerably more restricted meaning than simply being willing in good faith to pay compensation. If an employer could take out compensation insurance at one time and so notify the commission, and by such action create for himself a status limiting his liability only as provided in the act, irrespective of whether he has secured the payment of compensation when the employee is injured, then the provisions for securing compensation to injured employees would be substantially nullified. Nor does an employer's bona fide desire to pay in accord with the act constitute a substitution for compliance with the plain mandate of the statute. It is undisputed that appellant's son received an injury arising out of and in the course of his employment by appellee, that appellee did not have compensation insurance on the date of the injury and death, and that he had not qualified as a self-insurer and had not applied for coverage under the assigned risk plan. Hence appellee failed to secure the payment of compensation as required by the act. And under Section 5, appellant had the right to elect to maintain an action at law for dam-

ages. The case will therefore be reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

All justices concur, except *McGehee, C. J.,* and *Gillespie, J.,* who took no part.