Arthur L. SUMMER, Appellant,

v.

VICTOR CHEMICAL WORKS, a corporation, Appellee.

No. 17258.

United States Court of Appeals
Ninth Circuit.

Nov. 30, 1961.

John C. Hoyt, Great Falls, Mont., and Ralph J. Anderson and Stanley P. Sorenson, Helena, Mont., for appellant.

James A. Robischon and Kendrick Smith, Butte, Mont., for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

This is an action for personal injuries instituted in the state court and transferred to the federal court upon ground of diversity of citizenship. There existed below allegations of the requisite diversity and an amount exceeding the jurisdictional minimum in issue. 28 U.S.C. § 1332. This court has jurisdiction on appeal from the granting of a motion to dismiss the action. 28 U.S.C. § 1291.

In the complaint on file, it is alleged that during all relevant times, appellant was an employee in appellee's chemical manufacturing plant in Butte, Montana. Appellee used phosphorus [1] in its manufacturing business.

In April of 1959, appellant was working on the fourth floor of one of appellee's buildings when he, appellant, was exposed to fumes emitted from phosphorus which was being processed in the furnace room of said building.

On January 14, 1960, appellant was again exposed to phosphorous fumes while in the employ of appellee.

[1]. A waxy, solid material which ignites spontaneously in the air at thirty-four degrees centigrade and gives off poisonous toxic fumes.

Each exposure to phosphorous fumes was alleged as a separate cause of action by appellant; each with an *ad damnum* prayer for $305,000 and costs. Appellant alleged the injury was within the purview of the Occupational Disease Act of Montana,[2] and that appellee had not elected to be covered by this Act nor by any of its compensation plans.

Appellee appeared in the district court and moved to dismiss the complaint. The district court granted the motion upon the ground that appellant's disability was a result of an industrial accident, and his exclusive remedy was under the Workmen's Compensation Act of Montana.[3]

The appellant prosecutes this appeal from the district court's order dismissing the action and assigns four points as errors.

The controlling question before this court is stated by appellant in his third specification of error, *viz.*:

"3. The District Court for the District of Montana erred in failing to find that plaintiff's injuries alleged to be suffered as a result of exposure to phosphorous fumes constitute an occupational disease under the terms and provisions of the Montana Occupational Disease Act." (Br. p. 6.)

If the district court was correct, it would necessarily follow that: (a) appelllant's exclusive remedy (if he had one) was under the Workmen's Compensation Act;[4] (b) the Occupational Disease Act was not before the district court, and therefore whether or not said Act impliedly repealed conflicting sections of the Workmen's Compensation Act of Montana was moot;[5] and (c) the district court correctly dismissed appellant's complaint as failing to state a cause of action.[6] To the contrary, if appellant's alleged injuries did constitute an occupational disease within the meaning of the Occupational Disease Act of Montana, then the district court committed error and the cause must be remanded so that it may proceed on the merits.

Is the appellant entitled to the remedy afforded by the Montana Occupational Disease Act?[7]

Section 92–1304 of the Act reads, in material part:

"Occupational disease. The following diseases only *shall be* termed occupational diseases. [Emphasis added.]

\* \* \* \* \* \*

"2. Poisoning by

\* \* \* \* \* \*

"(h) Phosphorus or its compounds. \* \* \*."

We first consider the meaning of "poisoning." There is no reason to go beyond the usual, commonly understood meaning of the word; the legislature has given no special definition for this word when used within this Act. The accepted and usual definition[8] of either the verb or the noun does not indicate that it precludes a result of a sudden act. Nor is there reason to believe that one cannot be accidentally poisoned. Though poisoning can be a gradual process (when it would not have been deemed an accident within *some* workmen's compensation acts) it

2. Sections 92–1301 et seq., Revised Code of Montana, 1947, Vol. VI, 1961 Supplement.

3. Sections 92–101 et seq., Revised Code of Montana, 1947.

4. Essence of appellant's second assignment of error.

5. Essence of appellant's fourth assignment of error.

6. Essence of appellant's first assignment of error.

7. The Occupational Disease Act of Montana, n. 2, supra, is herein referred to for convenience as the "Act."

8. "Poison, v.; \* \* \* 1. To put poison on or into; to infect or impregnate with poison; \* \* \*. 2. To administer poison; to injure or kill by poison; also, to cause a morbid state of or in by infection \* \* \* as, to poison the blood, a wound, or the hand \* \* \*." (Emphasis added.)

"Poisoning \* \* \* n. The morbid condition produced by a poison." Webster's New International Dictionary, 2d ed., Unabridged (1956).

can also be a sudden and complete impregnation (when the incident may also constitute an accident within *most* workmen's compensation acts).

■ Both parties cite cases wherein courts have set forth the usual rules of statutory construction and interpretation. Generally such cases represent good law, and they generally accord with the cases of this circuit—when such rules must be resorted to for the interpretation of ambiguous legislation. But "when a statute is unambiguous, the courts may not look elsewhere for the legislative intent." Easson v. C. I. R., 9 Cir., 1961, 294 F.2d 653, 656. See, also, 62 Cases More or Less, etc., of Jam v. United States, 1951, 340 U.S. 593, 596, 71 S.Ct. 515, 95 L.Ed. 566; Department and Specialty Store Emp. Union, Local 1265, R.C.I.A. AFL–CIO v. Brown, 9 Cir., 1960, 284 F.2d 619; N. L. R. B. v. Lewis, 9 Cir., 1957, 249 F. 2d 832. And here the statute seems to us to be unambiguous.

The legislature has commanded that poisoning by phosphorus or its compounds *shall be* (i. e., is) termed (i. e., deemed) *an occupational disease*. The legislature has also commanded the court to construe this Act liberally.[9] Counsel for both parties concede—and the district court so held—that the Act is humanitarian and for the benefit of the working man. It follows, therefore, that the Act is to be liberally construed for the benefit of employees. Appellant is such an employee; this court must do for him as it has been told to do by the legislature. The Act contained a repealing clause [10] which repealed all acts "or parts of acts" in conflict with the Act. This is to be kept in mind by this court.

The cases cited by appellee [11] to support his argument that the disability alleged by appellant is not an occupational disease within the meaning of the Act do not carry conviction. None of these cases define the term as used in an occupational disease act; indeed, all the cases

9. *"92–1368. This act to be liberally construed. Whenever this act or any part or section thereof is interpreted by a court, it shall be liberally construed by such court."* This section is not cited by the parties but the court takes judicial notice thereof.

10. Section 69 of Ch. 155, Laws 1959.

11. Rathbun v. Taber Tank Lines, 1955, 129 Mont. 121, 283 P.2d 966; Murphy v. Anaconda Co., 1958, 133 Mont. 198, 321 P.2d 1094 (both proceedings by widows for Workmen's Compensation benefits); Gentry v. Swann Chemical Co., 1937, 234 Ala. 313, 174 So. 530 (the cause of action pleaded was not within the Workmen's Compensation Act); In re Mitchell, 1944, 61 Ariz. 436, 150 P.2d 355 (proceeding by widow for Workmen's Compensation benefits); Hendrickson v. Continental Fiber Co., 1926, 3 W.W. Harr. 304, 136 A. 375 (slow, gradual, idiopathic disease, unaccompanied and unrelated to any injury by accident, not an injury within Workmen's Compensation Act; defendant-employer's demurrer overruled; declaration stated a cause of action); Martin v. Brown Paper Mill Co., La.App., 1948, 35 So.2d 140 (appellant's skin disease held not to be an accident within the Workmen's Compensation Act); Bonner v. American General Insurance Co., Tex.Civ.App., 1940, 139 S. W.2d 204 (Workmen's Compensation Act did not compensate for death or disability resulting from an occupational disease); Cason v. American Brake Shoe & Foundry Co., D.C.Colo.1940, 32 F.Supp. 680 (appellant had a common law remedy against employer as the injury was an occupational disease not within the Workmen's Compensation Act); Moore v. Service Motor Truck Co., Ind.1924, 80 Ind.App. 668, 142 N.E. 19 (after a proceeding under the Workmen's Compensation Act to obtain compensation for personal injuries; compensation denied; on appeal the question presented was whether the injury complained of was an accident within the meaning of the Workmen's Compensation Act, rather than an occupational disease); Billo v. Allegheny Steel Co., 1937, 328 Pa. 97, 195 A. 110 (question was whether Workmen's Compensation Act barred employee's claim for relief); Iwanicki v. State Industrial Commission, 1922, 104 Or. 650, 205 P. 990, 29 A.L.R. 682 (proceeding for compensation under the Workmen's Compensation Act); Seattle Can Co. v. Dept. of Labor & Industry, 1928, 147 Wash. 303, 265 P. 739 (Proceeding for compensation under the Workmen's Compensation Act).

were decided before such an act was adopted within their respective jurisdictions. They are not in point.

Appellee urges and the district court held that allowing appellant to come within the Act in this case would narrow or limit the Workmen's Compensation Act, and that because of the humanitarian purpose of the Occupational Disease Act, it would be absurd to say that in passing the Act the legislature intended such a result. Putting aside for the moment the fact that the Act contained an express repealing clause (§ 69), such an argument carries weight until we examine the Act. We find that § 92–1307 of the Act provides, in part:

"This act shall apply to, and only to, all employers and employees who now are or hereafter will be subject to the provisions of the workmen's compensation act of the state of Montana. * * * *"

Section 92–1309 gives the employee the right to reject the provisions of the Act; but the employer has no such right, without severe penalty. Employers have the choice of any one of three plans: (1) To be self-insured and make direct payments required by the Act; (2) to insure his liability; or (3) to participate in a state occupational disease compensation fund by payment of assessments (§ 92–1334). The employer who does not adopt any one of the three plans cannot avail himself of the provisions of the Act, and loses his common law defenses of (a) contributory negligence, (b) negligence of a fellow employee, (c) assumption of risk doctrine. (§ 92–1339.)

On the other hand, the employee receives compensation payment for total disability, whether temporary or permanent; and his beneficiaries or dependents in the event of his death receive death benefits in the same amounts, respectively, as they would under the Workmen's Compensation Act. (§ 92–1321.) *No compensation is payable for partial disability from an occupational disease* (§ 92–1322), although certain medical and hospital benefits are paid during partial disability (§ 92–1325).

Further, if the employer elects to be bound by it, then unless the employee has himself rejected the Act, it shall be *the employee's exclusive remedy against the employer bound by the Act.*

Turning from the Act to the pleadings, it is alleged (para. 4, Count I, Complaint) "Defendant did not elect to come under nor was it covered by any of the plans as set forth in the Occupational Disease Act of Montana." Under this circumstance, is appellant required to find his remedy under the provisions of the Workmen's Compensation Act? We think not.

Section 92–1331 provides:

"There shall be no common law right of action for damage from occupational disease against an employer who elects to come under the provisions of this act, excepting for those employees not eligible for compensation under the terms of this act, or who reject coverage of this act."

Appellant claims to be and, by the allegations of his complaint, is eligible. He has not rejected the Act, nor could he, because it is alleged the employer did not elect to come within it, and has selected none of the three plans mentioned above. The allegations of the complaint must be considered as true. Thus, § 92–1331 recognizes the existence of a common law cause of action in appellant under such circumstances. Further, § 92–1339, subd. A impliedly recognizes that a common law cause of action exists in appellant if appellee has failed to comply with the choice of one of three compensation plans specified in § 92–1334, because it denies to the employer, subject to the Act but who fails to comply, the "usual defenses" in a common-law action, ordinarily denied an employer under state compensation acts and specifically denied to him here under the Montana Workmen's Compensation Act, 1947 Revenue Code of Montana, Ann. Vol. VI, Title 92–201.

Again, we note that § 92–203 of the Montana Workmen's Compensation Act,

provides that "except as specifically provided in this act, all causes of action, actions at law * * * all statutory and common-law rights and remedies for * * * death * * * or personal injury * * * are hereby abolished * * *." No corresponding provision is contained in the Montana Occupational Disease Act. See also 117 A.L.R. 515; Ballard v. Stroube Drug Co., La.App., 1944, 19 So.2d 593; Utah Idaho Sugar Co. v. Temmey, 1942, 68 S.D. 623, 5 N.W. 2d 486; Bourgeois v. J. W. Crawford Constr. Co., La.App., 1947, 28 So.2d 765; Carbonnaeu v. Hoosier Eng. Co., et al., 1950, 96 N.H. 240, 73 A.2d 802; Courage v. Carleton, 1950, 96 N.H. 348, 77 A.2d 111; Jeune v. Industrial Commission, 1954, 77 Ariz. 410, 274 P.2d 85; McNeese Constr. Co. v. Harris, Ky.1954, 273 S.W. 2d 355; McCoy v. Cornish, 1954, 220 Miss. 577, 71 So.2d 304; McCarthy v. United Service Auto. Ass'n, 1960, 24 Misc.2d 79, 204 N.Y.S.2d 420.

The Occupational Disease Act may have a limiting effect on the earlier compensation act, but taking the Act as a whole, the effect on the beneficiary (the working man) is not narrowed by the subsequent Occupational Disease Act; it is enlarged. It is this effect which is crucial.

Appellee urges, however, that with respect to partial disability, the Occupational Disease Act *does* narrow the coverage of the Workmen's Compensation Act. He argues:

"Let us suppose for argument that the defendant had elected to be bound by both the Occupational Disease Act and the Workmen's Compensation Act and the plaintiff had been injured as described in his complaint with the result that he incurred *partial permanent disability*. Under our argument plaintiff would be entitled to receive compensation based upon his partial permanent disability as set forth in schedules of the Workmen's Compensation Act.

"However, under Appellant's argument that the accident is no longer covered by the Workmen's Compensation Act, but is now covered by the Occupational Disease Act *the plaintiff would not be entitled to any compensation whatsoever*. Section 22, Chapter 155, Laws of 1959 (R.C.M. 1947, 92–1322) of the Occupational Disease Act specifically provides that the employee shall receive no compensation for partial disability resulting from an occupational disease." (Emphasis appellee's.) (Br. p. 10.)

Whether or not appellant is entitled to relief under the Workmen's Compensation Act is not before this court under the facts here alleged, nor is the question of whether appellant would receive compensation for partial permanent disability under the Workmen's Compensation Act before this court. That the appellant would not be entitled to compensation for partial disability under the Occupational Disease Act is clear; and that the legislature did not intend for him to receive compensation for partial disability is equally clear.[12] The legislature once having given relief where there had been none before under the Workmen's Compensation Act, is it absurd to think that the legislature would take away from the employee relief which had once been given, but which the legislature now believes unwarranted in a limited area (in which abuses might have developed—alleged partial disability from an occupational disease—), and at the same time give the employee enlarged rights in a limited field where no such abuses had, or, in the opinion of the legislature, would appear?

Appellee argues that the legislature could not have intended to repeal the Workmen's Compensation Act, or any parts thereof. If that be so, why did the

12. "92–1322. No compensation for partial disability. No compensation as provided in section 21 [92–1321] of this act shall be payable to an employee who is partially disabled from an occupational disease."

legislature place a repealing clause in the Act.[13] It must have been apparent to the legislature that there could be a conflict between the existing compensation act and the new Occupational Disease Act. The new Act specifically refers to the old (e. g., § 92–1333), and, as pointed out in one of the cases cited by appellant:

"[I]t would be a reflection on the intelligence of the legislators to say that the repeated repealer sections in each did not mean that all acts and parts of acts in conflict therewith are hereby repealed, *especially after their judiciary committees have carefully gone over and examined and approved and recommended the passage of the acts and the amendments.* [Citations.]" (Emphasis added.) State of Montana ex rel. Dahl v. District Court of the Fourth Judicial District, 134 Mont. 395, 333 P.2d 495.

But appellee urges the case of Fletcher v. Paige, 1950, 124 Mont. 114, 119, 220 P.2d 484, 19 A.L.R.2d 1108, as controlling law —that appellant must "overcome the presumption that the legislature in adopting the Occupational Disease Act did not intend to interfere with or abrogate the application of the Workmen's Compensation Act." Of course, no such presumption exists if the new act clearly repeals the earlier. Here *the earlier law is mentioned.* Fletcher v. Paige, supra, (dealing with a conflict between the State Liquor Control Act and the Montana Beer Act) holds:

"It will not be presumed that a subsequent enactment of the legislature intended to repeal former laws upon the subject, *when such former laws were not mentioned.*" (Id. 220 P.2d at 487.) (Emphasis added.)

We find the Fletcher case inapplicable to the facts of this case.

Appellee also argues that the Act and the Workmen's Compensation Act relate to different subjects. Why then did the legislature include § 92–1333 in the Act? This section reads, in pertinent part:

"92–1333. Diminution of compensation. Compensation payable pursuant to the terms of this act to the claimant, * * * shall be diminished by the amount of any compensation paid or to be paid him or them under the workmen's compensation act of Montana or any other workmen's compensation act."

Appellee also makes much of the fact that appellant concedes that the alleged injury would come within the purview of the Workmen's Compensation Act if there had been no enactment of the Occupational Disease Act. We think this immaterial. Counsel for appellant is compelled to be wisely cautious. If it were held that his client was not entitled to relief under the Act, and he had argued that he was entitled to no relief under the Workmen's Compensation Act, he might well have argued his client out of any relief. The concession of appellant's counsel relates to the state of the law before the Occupational Disease Act was adopted—the remedy under the new Act is exclusive.[14]

Finally, appellee argues that appellant "does not want the protection of the Workmen's Compensation Act." But the election of remedies is not an unheard of concept in the law. Appellant's counsel rightly seeks to put his client on the most attractive road to relief. Whether he can ultimately succeed, we do not know. By the pleadings, we note it was appellee who elected not to be covered by the Act— not appellant.

■ We believe the holding of the district court (characterized by appellant as a "finding") that:

" * * * the disability from which the plaintiff is alleged to be

---

13. Note 10, supra.

14. "92–1308. Right to compensation exclusive remedy. The right to recover compensation pursuant to the provisions of this act for occupational diseases sustained by an employee * * * shall be the exclusive remedy therefor against the employer electing to be bound by and subject to this act, except as to such employees as shall reject this act as provided herein."

suffering, traceable as it is to unexpected or accidental exposure to phosphorous fumes on two definite occasions, identifiable as to time and place, is the result of an industrial accident rather than an occupational disease * * * ", [R. 22]

is clearly erroneous, based on the pleadings and the Montana law.

The district court's order is set aside and reversed, with instructions to proceed with the cause on its merits.