RONALD L. GREGER, Claimant and Appellant, *v.* UNITED
PRESTRESS, INC., Employer, and State insurance fund, De-
fendant and Respondent.

Submitted on Briefs Dec. 29, 1978.
Decided Feb. 14, 1978.
590 P.2d 1121.

Robert L. Kelleher, Billings, for claimant and appellant.

Tim Reardon, Helena, for defendant and respondent.

MR. JUSTICE HARRISON delivered the opinion of the Court.

This is an appeal by claimant from an order of the Workers' Compensation Court denying workers' compensation benefits but granting occupational disease compensation to claimant.

Claimant is a 36 year-old man who began working for United Prestress, Inc. (hereinafter employer) on August 8, 1975. From that date through December 26, 1975, claimant was primarily engaged in welding, cutting and setting up forms for concrete structures. He did not work in cement.

Claimant returned to work for employer on a regular basis on March 1, 1976, at which time he began working in concrete. In the fall of 1976 claimant began to have problems with his legs and hands, shortly after an additive was put in the cement in an effort to make the cement dry faster.

Claimant continued working until December 31, 1976, when he was laid off. After terminating his work, his hands cleared up. He returned to work for employer in March 1977. Claimant terminated his employment on April 17, 1977.

Claimant was examined by Dr. Orman on April 14, 1977, and indicated to the doctor that he had had problems with his skin for some six months. Dr. Orman diagnosed claimant's problem as contact dermatitis and found claimant to be allergic to chromium and

nickel. Claimant, according to the doctor, must avoid materials that cause an allergic reaction. Dr. Orman testified that the contact dermatitis from his point of view was both an injury and an occupational disease.

Claimant filed a claim for compensation in May 1977. The insurer treated the claim as an occupational disease and awarded benefits from April 14, 1977 to July 6, 1977, the period claimant was totally disabled. Claimant petitioned the Workers' Compensation Court, seeking an adjudication that the claim was an "injury" under the Workers' Compensation Act and not a proper claim for the Occupational Disease Act. The Workers' Compensation Court found that the claimant was suffering from an occupational disease and from that decision claimant appeals.

The principal issue presented for this Court's review is whether the Workers' Compensation Court erred in concluding that claimant's contact dermatitis falls within the Occupational Disease Act rather than the Workers' Compensation Act.

More specifically, claimant raises the following secondary issues:

1. Did the Court err by failing to find that claimant's contact dermatitis is an industrial injury because either (a) it is "a tangible happening of a traumatic nature from an unexpected cause . . . resulting in . . . external . . . physical harm . . ." or (b) is a "disease . . . traceable to injury"?

2. Did the Court err by refusing to find that claimant is entitled to compensation under both sections 92-715 and 92-703.1, R.C.M. 1947, now sections 39-71-741 and 39-71-703 MCA?

3. Did the Court err in its Conclusion of Law No. 3(5) and Decree No. 2 by concluding that contact dermatitis is "incidental to the character of the business" as defined in section 92-1305, R.C.M.1947, now section 39-72-408 MCA?

4. Did the Court err by refusing to find that claimant, because he can no longer work with chrome or nickel compounds or petroleum products, had suffered permanent partial disability of 41.3 percent?

5. Did the Court err by refusing to award attorney fees to claimant under section 92-619, R.C.M.1947, now section 39-71-613 MCA?

The issue raised in the instant case requiring a determination under the facts set forth of the Occupational Disease Act of 1959 is an issue of first impression as far as Montana is concerned. The question is whether someone who has an allergy which is aggravated by work exposure should be treated as having an occupational disease under the Occupational Disease Act or an injury under the Workers' Compensation Act.

Section 92-1304, R.C.M., now section 39-72-102(11) MCA, defines occupational disease:

"The term 'occupational disease' shall mean all diseases arising out of or contracted from and in the course of employment.'

There is no dispute here that claimant's problem is that he has an allergy and hence cannot work around cement or petroleum products due to the fact they contain chromate or nickel ions. When he works in cement his skin breaks out. Since cement is incidental to his employer's business and since it is his job to work in cement, it apears the condition clearly arose out of and in the course of his employment.

Dr. Orman, the treating physician, characterized the claimant as suffering from both an "injury" and an "occupational disease". In his deposition he stated:

"Q. Now, then, could contact dermatitis be described medically both as an occupational disease and as an injury? A. I would say from my point of view, as not in the legal field, I would say yes, that—you could apply that disease—you could apply that condition, using it both as an injury and it is a disease."

Claimant argues that as far as the doctor is concerned the contact dermatitis or allergy cannot be singled out as being just one of two conditions. The doctor says it is both, and it was up to the presiding judge to decide which it was. He decided it was an occupational disease.

The trial court considered the causation requirements and found claimant's petition had met those criteria. The applicable law is section 92-1305, R.C.M.1947, now 39-72-408 MCA, proximate causation. It states:

"Occupational diseases shall be deemed to arise out of the employment only if:

"1. There is a direct causal connection between the conditions under which the work is performed and the occupational disease.

"2. The disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.

"3. The disease can be fairly traced to the employment as the proximate cause.

"4. The disease does not come from a hazard to which workmen would have been equally exposed outside of the employment.

"5. The disease is incidental to the character of the business and not independent of the relation of employer and employee."

We must first look to see if claimant fits within the confines of section 92-1305. First, it is clear that exposure to the cement during his regular work triggered the allergic reaction. Thus, there is a "direct causal connection" between the job performance and the disease. Second, is a disease a "natural incident" of the work? Obviously, working in cement is a nature of the job and anyone who is allergic to the chromate ions will have the same allergic reaction. Dr. Orman testified to this fact in his deposition stating: "Yes, people who are sensitive to a certain—chromate ion—and most of these little ions do penetrate the skin, yes, naturally they will penetrate the skin, and if the person is allergic it does penetrate and of course then it does set up this reaction." Here, the disease can be traced to the employment, for the only exposure complained of was to the cement work. Third, claimant obviously contends that the employment is the source of his problems regardless of whether this is compensation claim or an occupational disease claim. The employment is the source and the eruption of claimant's

hands and legs is incidental to the work and not from a source other than work.

While Dr. Orman testified that skin eruptions suffered by claimant was an injury, the doctor is not the trier of fact and not qualified to make a determination legally as to whether the claimant suffered an injury within the meaning of the Workers' Compensation Act. The distinction between occupational disease and injury is a legal one.

Speaking to this point, Professor Larson in his treatise, Larson, *Workmen's Compensation, Desk Edition,* states at page 7-61:

"Jurisdiction having the general coverage of occupational disease, as distinguished from the schedule coverage of listed diseases, now usually define the term to include any disease arising out of exposure to harmful conditions of the.employment when those conditions are present in a peculiar or increased degree by a comparison with the employment generally. Thus, even a disease which is rare and which is due to the claimant's individual allergy or weakness combining with the employment conditions will usually be held to be an occupational disease if the increased exposure occasioned by employment in fact brought about the disease."

Montana's occupational disease act does have general coverages opposed to a list of coverages. However, claimant's allergy was made symptomatic due to exposure to cement. Factually it fits the general rule laid out by Larson. The employment is the source, because once removed from the work environment his problem cleared up.

As stated in 1B, Larson, *Workmen's Compensation Law,* § 41.62 (1973, the majority of the rule throughout the United States is:

"The majority of jurisdictions, however, have held that individual allergy or weakness is immaterial, if the particular conditions of employment in fact caused the disability."

In § 41.63, Larson states:

"Closely related to the question of preexisting allergy is that of the preexisting weakness, disease, or susceptibility. Most courts treat this problem the same as that of allergies, and hold that when

a distinctive employment hazards act upon these preexisting conditions to produce a disabling disease, the result is an occupational disease."

The question now before the Court is whether to follow the majority rule which holds that when an individual allergy is aggravated by work experience in the ordinary course of work, the result is an occupational disease. We find that the prevailing and most convincing view is that such allergies are to be considered occupational diseases. This is especially important when one considers that the purpose of the occupational disease act is to compensate workers who contract a disease or have inert diseases when no "accident" is involved, or as in Montana, where there is no "injury" as defined in section 92-418, R.C.M.1947, now 39-71-119 MCA. This majority, and we believe convincing, rule is founded on the theory that diseases contracted from employment should be compensated.

We find it is of special import to note, before discussing the Montana cases cited and relied on by claimant, that all of these case decisions preceded the enactment of the Occupational Disease Act of 1959. To rely on these cases as authority for claimant's position is questionable, for had the Occupational Disease Act been in effect at the time these cases were decided, it is quite possible that many, if not all, of the claims would have been decided differently. When these cases were decided the purpose of the Worker's Compensation Act was to provide relief to disability occasioned by industry and the only relief available was under the compensation act. The cases cited and relied on are *Hines v. Industrial Accident Board* (1960), 138 Mont. 588, 358 P.2d 447, a polio case; *Young v. Liberty National Insurance Co.* (1960), 138 Mont. 458, 357 P.2d 886, a case where there was arteriosclerosis and arteriospasm of the arteries and arterioles caused by extreme exposure; *Gaffney v. Industrial Accident Board* (1955), 129 Mont. 394, 287 P.2d 256, a Parkinson's disease case; *Levo v. General-Shea-Morrison* (1955), 128 Mont. 570, 280 P.2d 1086, a heart disease case; *Tweedie v. Industrial Accident Board* (1936), 101 Mont. 256, 53 P.2d 1145, a

diseased kidney; *Birdwell v. Three Forks Portland Cement Co.* (1953), 98 Mont. 483, 40 P.2d 43, a sun stroke case; *Moffett v. Bozeman Canning Co.* (1933), 95 Mont. 347, 26 P.2d 973, a Parkinson's disease case; *Williams v. Brownfield-Canty Co.* (1933), 95 Mont. 364, 26 P.2d 980, a meningitis case; *Murphy v. Industrial Accident Board* (1932), 93 Mont. 1, 16 P.2d 705, a respiratory and tuberculosis case; *Nicholson v. Roundup Coal Mining Co.* (1927), 79 Mont. 358, 257 P.270, a heart case.

As previously noted, these cases were decided before we adopted the Occupational Disease Act and are not controlling or binding on this Court.

Respondent cites several cases in support of its position that it should be an industrial disease case and not an industrial accident. In *Lelenko v. Wilson H. Lee Co.* (1942), 128 Conn. 499, 24 A.2d 253, a linotype operator became incapacitated by dermatitis. There were no other reported cases of dermatitis at the plant and the claimant was found to be individually susceptible to the conditions at the plant. The court found that the claimant suffered from an occupational disease.

In *Simpson Logging Co. v. Department of Labor and Industry* (1949), 32 Wash.2d 472, 202 P.2d 448, an employee who contracted asthma was found to be suffering from an occupational disease despite the claimant's assertion that he was suffering from an allergy or a personal sensitivity.

In *Summer v. Victor Chemical Works* (9th Cir. 1961), 298 F.2d 66, the claimant was employed by a chemical plant. On two separate occasions he was exposed to a phosphorous fume. The circuit court reversed the district court's finding that the claimant's case fell within the industrial workers' compensation act and concluded that it was properly an occupational disease, regardless of the fact that it was traceable to an unexpected or accidental exposure.

In another case, *Dayton v. Boeing Co.* (D.Mont.1975), 389 F.Supp. 433, the court, citing *Summer*, held that a claimant's exposure to electro magnetic pulses and laser radiation was, in Montana, an occupational disease.

In a case cited by both claimant and respondent, *Aleutian Homes v. Fischer* (Alaska 1966), 418 P.2d 769, the claimant was a bookkeeper-stenographer for Aleutian Homes. She suffered from contact dermatitis and it was established that she had a history of breaking out in a skin rash while handling particular items, one of which was carbon paper. She was considered medically to be sensitive to certain items including the carbon paper. The claimant applied for compensation which was denied as a workers' compensation case. The decision was reversed in the Supreme Court of Alaska making the award under the benefits for an occupational disease, with the Court noting:

"We hold that if a disease is caused by the conditions of employment and these conditions carry with them a risk of incurring the disease greater than that which prevails in employment and living conditions in general, then such disease is an occupational disease within the scope of our act. Compensation is not to be barred because the risk is not generally recognized or because only those unusually susceptible or predisposed to a given disease will contract it. Under this definition of the occupational disease we hold that there is substantial evidence in the record showing that the appellee's contact dermatitis was caused by the conditions of her employment as a secretary-bookkeeper for appellant, and that these conditions were peculiar to her employment—that is, the risk of her contracting contact dermatitis was present to a greater degree than is found in employment and living conditions in general." *Aleutian* at 778.

So it is with claimant in this case. His employment conditions cause him to have a reaction to the cement due to his personal sensitivity.

■ Several issues raised by claimant, one of estoppel and two that the court failed to follow the guidelines of section 92-1305 can be disposed of summarily in view of the fact that claimant failed to raise these matters at the trial court level. It has long been the rule that on appeal only the issues raised in the trial court will be reviewed. See *Riefflin v. Hartford Insurance Co.* (1974), 164 Mont.

287, 521 P.2d 675, and *Spencer v. Robertson* (1968), 151 Mont. 507, 445 P.2d 48.

■ The next issue raised is claimant's position that he suffered some permanent impairment, equal to 41.3 percent. He argues that in his job classification positions in the Yellowstone County area, he cannot take some 41.3 percent of the available jobs because of his disability to work in cement. Respondent's position is that while the claimant cannot work in cement, the percentage basis was insignificant and the court properly found him not entitled to further compensation.

■ The final issue raised is whether the court erred in refusing to award attorney fees. The court found, and we sustain the finding, that claimant is not entitled to attorney fees unless the case is found to be a workers' compensation case. Where it is found that claimant suffered some disease under the occupational disease act, he is not entitled to attorney fees under section 92-619, R.C.M.1947, now section 39-71-613 MCA.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and SHEEHY concur.