No. 82-320

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

DAREL R. RIDENOUR,

Claimant and Respondent,

vs.

EQUITY SUPPLY COMPANY, and
GLACIER GENERAL ASSURANCE COMPANY,

Defendants and Appellants.

---

Appeal from:  Workers' Compensation Court
              Tim Reardon, Judge presiding.

Counsel of Record:

     For Appellants:

          Garlington, Lohn & Robinson, Missoula, Montana

     For Respondent:

          James E. Vidal, Kalispell, Montana

---

En Banc
Submitted on briefs: April 25, 1983
Submitted

                   Decided·  June 30, 1983

Filed: JUN 3 0 1983

_____
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In this case we are asked to review an order granting workers' compensation benefits to respondent, Darel R. Ridenour. Appellants claim that benefits should have been awarded under the Occupational Disease Act rather than the Workers' Compensation Act. We find that benefits were properly awarded, therefore we affirm.

Claimant had worked for Equity Supply Company for about twelve years. He worked primarily within the fertilizer department, but he also worked as a handyman. Claimant had smoked cigarettes since 1944. Smoking, combined with twelve years of work in a dusty environment had resulted in Chronic Obstructive Pulmonary Disease (COPD). COPD is a medical term describing a spectrum of lung diseases, including asthma, bronchitis, and emphysema. With the COPD, claimant was able to perform his job, although at times he experienced shortness of breath. Prior to the injury date, claimant had visited a family physician. Claimant complained of tiredness and shortness of breath. The doctor noted that his breath sounds were quite distant, which could be a result of COPD which can be secondary to a smoking history.

On December 18, 1978, claimant was asked to repair a mechanism on top of a grain bin. Upon receiving instructions, he ascended on a man-lift in the grain elevator section. He left the man-lift and proceeded through a small shed and on to an eighty-foot catwalk. When he reached the repair site he decided he needed additional tools. He went back across the catwalk in order to take the man-lift to the ground level. He entered the shed and was overcome by a high concentration of grain dust produced by an unloading operation which was taking place below. He could hardly see but he made his way to the man-lift and descended to the main floor. As he proceeded down, he experienced extreme breathing difficulties. The claimant was

immediately taken to a physician. The treating physician prescribed epinephrine to relieve bronchial spasm, and diagnosed Ridenour's condition as acute asthmatic bronchitis. After this incident, claimant could not perform his usual job. He attempted to perform less demanding chores, yet was unsuccessful. He finally ceased employment on May 20, 1979.

The medical evidence consists primarily of testimony from three physicians; Dr. Maloney, a family practitioner, and two pulmonary specialists, Dr. Power and Dr. Schimke. Dr. Maloney had seen respondent prior to and immediately after the incident on December 18. Dr. Maloney testified that the single grain dust inhalation of December 18 would not have caused respondent's COPD. In other words, there was clearly a pre-existing condition. Dr. Maloney indicated that even if the inhalation incident had not occurred, it was probable that respondent, if he continued to smoke and work in the same environment, would eventually become disabled as a result of his COPD. However, the time frame could not be predicted, he may have made it to retirement age.

Dr. Schimke testified that respondent's chest x-rays indicated the development of emphysema for at least ten to fifteen years prior to examination and that there was no new disease traceable to the incident on December 18. He described the inhalation as a "severe but temporary illness and disability" however, the one episode "may have resulted in more asthma and more bonchitis, which could flare up more readily in the ensuing months and years." Dr. Power agreed that there was a pre-existing condition that could not have been caused by the single inhalation of grain dust. He described the incident as a triggering mechanism. According to Dr. Power, people with this kind of condition experience reduction in lung function over a period of time without being keenly aware that they have a major problem other than shortness of breath. Then an incident occurs "which is really the last straw that kind of breaks the camel's

back" that causes disability.

Ridenour's claim for benefits was treated as a claim under the Occupational Disease Act. The Division of Workers' Compensation computed Ridenour's benefits to be $3.93 per week. On May 26, 1981, Ridenour refiled his claim to indicate his desire to seek benefits under the Workers' Compensation Act for total disability due to an accident. A hearing was held in the Workers' Compensation Court on July 16, 1981, Judge Hunt presiding. Prior to decision, Judge Hunt left the bench. The newly-appointed judge, Timothy Reardon, disqualified himself. Jurisdiction was assumed by District Judge Gordon Bennett who appointed Roger Tippy as a hearings examiner. Mr. Tippy reviewed the record and entered findings of fact and conclusions of law and judgment; ruling that claimant was entitled to permanent total disability benefits under the Workers' Compensation Act at the rate of $145.33 per week. Thereafter, Judge Bennett adopted in full, and without exception, the findings and conclusions of the hearings examiner. The insurer and employer then brought this appeal.

We are asked to address two issues; first, whether it was error to allow election by the claimant between the provisions of the Occupational Disease Act and the Workers' Compensation Act, and second, whether it was error to conclude that claimant suffered an injury as defined in section 39-71-119, MCA. We address these issues in turn.

The focus of appellants' argument in relation to the first issue is that claimant suffered from an occupational disease, therefore, his exclusive remedy occurs under the Occupational Disease Act. Appellants cite the definition of occupational disease found in section 39-72-102(11), MCA, "'Occupational disease' means all diseases arising out of or contracted from and in the course of employment." Appellants also cite the statutory causation section which refines "arising out of . . . employment;" section 39-72-408, MCA:

"Proximate causation. Occupational diseases shall be deemed to arise out of the employment only if:

"(1) there is a direct causal connection between the conditions under which the work is performed and the occupational disease;

"(2) the disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;

"(3) the disease can be fairly traced to the employment as the proximate cause;

"(4) the disease does not come from a hazard to which workmen would have been equally exposed outside of the employment;

"(5) the disease is incidental to the character of the business and not independent of the relation of employer and employee."

Appellants argue that claimant's condition fits the above statutory definitions, therefore claimant's remedy can only be with the Occupational Disease Act, as specified in section 39-72-305, MCA, "The right to recover compensation pursuant to the provisions of this chapter for occupational diseases . . . is the exclusive remedy therefor against an employer . . ."

We disagree. We hold that although claimant may have had a compensable disease under the Occupational Disease Act, that status did not preclude eligibility under the Workers' Compensation Act. In other words, a particular claimant could meet the requirements of both acts, thus he would be allowed to choose his remedy. To allow an election between the two acts does not violate the exclusive remedy language of section 39-72-305, MCA. The legislature only intended that an employee not have a common law action against his employer.

Appellants cite three cases in support of their position. The earliest case is Summer v. Victor Chemical Works (9th Cir. 1961), 298 F.2d 66. In Summer the employee instituted an action for personal injuries in state court which was later transferred to federal court. The Federal District Court dismissed the action on the ground that the employee's disability was the result of an accident, thus his remedy was under the Montana

Workers' Compensation Act. Upon review, the ninth circuit court of appeals held that an employee who allegedly suffered an industrial accident could maintain an action against his employer who had not elected to be covered by the Occupational Disease Act. The court relied upon a section of the act which specifically prohibited common law actions against employers, except in those cases where employees were not eligible for benefits under the Act or in those cases where employees rejected coverage of the Act. This section was repealed in 1979. Summer dealt with a different statutory scheme, and while the case may be helpful, it is certainly not controlling. In fact, the case stands for liberal selection of remedies; a philosophy not beneficial to appellants.

Next, we are cited to Anaconda Co. v. District Court (1973), 161 Mont. 318, 506, P.2d 81, where the claimant brought an action against his employer for injuries suffered in an underground mine. The District Court allowed the action to proceed, contrary to the employer's assertion that the lawsuit was barred by the provisions of the Workers' Compensation Act and the Occupational Disease Act. The employer then petitioned this Court for a writ of supervisory control. This Court granted the writ and directed the District Court to order summary judgment in favor of the employer. It is clear that the claimant brought his personal injury action after his claim for occupational disease benefits had been rejected. In ordering summary judgment for the employer, we cited section 92-1308, RCM, 1947, (now section 39-32-305, amended) which precludes a common law action against an employer, even where a claimant has failed to prove entitlement to occupational disease benefits.

Finally, appellants cite Dayton v. Boeing Company (D. Mont. 1975), 389 F.Supp. 433, where the claimant sought damages for injuries sustained by exposure to electromagnetic pulses and laser radiation. The Montana Federal District Court, relying on this Court's holding in Anaconda, ruled that an employee who suf-

fers a disease that is covered by the Occupational Disease Act has no common law remedy against his employer.

Appellants' reliance on these three cases is misplaced. In all of these cases, the exclusive remedy question is raised in the context of a personal injury action. The question in these cases was whether or not a damage action could be maintained in view of the remedies provided through the Workers' Compensation and Occupational Disease Acts. In the case before us now, that is not the question.

It is obvious to us that the language of section 39-72-305, MCA, was only meant to prohibit personal injury actions against employers. The legislature did not intend to prevent a choice between statutory remedies. This interpretation is supported in several sections of both acts. We must read all of these sections together to discern legislative intent. As we said in Home Building and Loan Association of Helena v. Fulton (1962), 141 Mont. 113, 115, 375 P.2d 312, 313, "statutes must be read and considered in their entirety and the legislative intent may not be gained from the wording of any particular section or sentence, but only from a consideration of the whole."

First, section 39-72-305, MCA, the very section on which appellants' argument is based, distinguishes between the remedy provided in the Occupational Disease Act and the remedy afforded through a damage action. Subsection (1) makes it clear that the right to recover compensation against properly insured employers is provided within the Act. Subsection (2) then adopts provisions of the Workers' Compensation Act relating to uninsured employers. One of those adopted provisions deals with the right of an employee to elect between his remedies, including the right to bring a damage action against his employer. Section 39-71-508, MCA.

Another section within the Occupational Disease Act supports our interpretation. Section 39-72-709, MCA, states: "[c]ompensation payable pursuant to the terms of this chapter to the

claimant, his beneficiaries, or dependents shall be diminished by the amount of any compensation paid or to be paid him or them under the Workers' Compensation Act of Montana or any other workers' compensation act." The legislature recognized that a particular condition could be compensable under either act, and in such situations, double benefits will not be allowed.

We offer one further example found in the Workers' Compensation Act. Section 39-71-119(2), MCA, defines injury as, "cardiovascular or pulmonary or respiratory diseases contracted by a paid firefighter . . . Nothing herein shall be construed to exclude any other working person who suffers a cardiovascular, pulmonary, or respiratory disease while in the course and scope of his employment." (emphasis added) The legislature, in providing that certain diseases of paid firefighters be compensable under the Workers' Compensation Act, recognized that non-firefighters with cardiovascular, pulmonary or respiratory diseases might well be entitled to benefits under the Workers' Compensation Act rather than the Occupational Disease Act. In other words, the legislature realized that these kinds of diseases, while normally considered under the Occupational Disease Act, could be compensable as injuries under the definition of subsection (1) of 39-71-119, MCA. This is just such a case and we now consider whether the court erred by concluding that claimant suffered an injury.

An injury is defined as a "tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom and excluding disease not traceable to injury . . ." Section 39-71-119(1), MCA. (emphasis added) Appellants very capably discuss case law in relation to the exclusion of diseases not traceable to injury. We are asked to pay particular attention to LaForest v. Safeway Stores, Inc. (1966), 147 Mont. 431, 414 P.2d 200, which supposedly contains the guiding principles for resolution of this issue.

In LaForest we reversed an order awarding workers' compensation benefits because the medical evidence showed that claimant's bursitis existed before, and was not caused by the alleged accident. Appellants contend that the same situation exists in this case, therefore the claimant is not entitled to workers' compensation benefits. Although the same factual situation may exist (Mr. Ridenour's COPD existed long before the date of the accident, and no new disease was caused by the massive inhalation) it does not follow that workers' compensation benefits are precluded. In LaForest we were not asked to address the aggravation or acceleration factor, while in this case it is the central issue.

For many years it has been the rule in Montana that the employer takes his employee as he finds him, and as we said in Gaffney v. Ind. Acc. Board (1955), 129 Mont. 394, 401, 287 P.2d 256, 259, "[t]he fact that an employee was suffering from a pre-existing disease or disability does not preclude compensation if the disease or disability was aggravated or accelerated by an industrial injury which arose out of and in the course of the employment." Consequently, the question here is whether or not Mr. Ridenour's COPD was aggravated or accelerated by the inhalation incident on December 18, 1978.

Appellants discuss several cases dealing with aggravation and acceleration of pre-existing conditions and caution us to keep in mind that in this case, we are dealing with "a pre-existing, defined and certified occupational disease." It appears we are being asked to distinguish between a pre-existing condition and a pre-existing disease. However, there is no such distinction in the application of the aggravation and acceleration rule. An employer accepts his employee with all of his injuries and diseases. We have recognized that diseases are subject to aggravation or acceleration. In Wight v. Hughes Livestock Co., Inc., (1981), _____ Mont. _____, 634 P.2d 1189, 38 St.Rep. 1632, we were asked to review a finding of the Compensation Court which implied

that claimant's spinal disease was aggravated by an industrial accident. We affirmed, making no distinction between diseases and injuries.

Appellants' caution, that we are dealing with "a pre-existing, defined and certified occupational disease," surfaces again in discussion of Greger v. United Prestress, Inc. (1978), 180 Mont. 348, 590 P.2d 1121. In Greger the central issue was the same as in this case; whether claimant's condition was compensable under the Occupational Disease Act or the Workers' Compensation Act. Mr. Greger had worked regularly with concrete. He learned that he was allergic to chromium and nickel which are additives to the cement mixture. He developed contact dermatitis. The treating physician testified that claimant suffered both an injury and an occupational disease. However, the insurer had treated the claim as one for occupational disease and paid benefits for only that period of time in which claimant was totally disabled. The Workers' Compensation Court held for the insurer and we affirmed.

Appellants correctly argue that our holding in Greger was based in part on the fact that each statutory element of occupational disease was satisfied. Therefore, according to appellants, since Mr. Ridenour's condition met the same statutory elements, the same holding should apply. However, appellants misinterpret our reasoning. Our holding did not prohibit eligibility under the Workers' Compensation Act simply because claimant's condition fit the definition of occupational disease. In Greger there was not an injury. Claimant was exposed to the cement additives over a period of time. There was never "a tangible happening of a traumatic nature." We held that allergies which are aggravated by work experience result in occupational disease; noting that the "purpose of the occupational disease act is to compensate workers who contract a disease or have inert diseases when no 'accident' is involved, or as in Montana, where there is no 'injury' . . ." Greger, 180 Mont. at

354, 590 P.2d at 1124.

We have carefully reviewed the evidence in this case and conclude that the court properly ruled that Mr. Ridenour suffered an injury. Our function in reviewing these decisions is only to determine whether substantial evidence exists to support the findings and conclusions, and we cannot impose our judgment as to the weight of the evidence. Viets v. Sweet Grass County (1978), 178 Mont. 337, 583 P.2d 1070. There is no doubt that claimant met his evidentiary hurdle.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices