MR. JUSTICE HUNT,
dissenting:
I dissent. From the beginning, Eastman has been forced to surmount hurdles that would challenge even the greatest trial tactician. He appears before this Court pro se because his attorney, after collecting his fee, merged his law firm with the firm representing ARCO. Added to this burden, is the fact that Steven J. Shapiro, chief legal counsel for the Workers’ Compensation Division — the same division that actively opposed Eastman every step of the way — was appointed the first hearing examiner. The facts found by Shapiro and adopted by Robert J. Robinson, administrator for the division, are the facts Eastman has had to struggle with throughout this legal and medical morass. The wonder here is not that Eastman was denied his rights as an injured Montana worker. The wonder is that he got anything at all.
The majority holds that Eastman’s April 8, 1985, injury did not significantly aggravate his preexisting disease. Eastman’s medical history, however, tells a different story.
Prior to the April 8, 1985, injury, Eastman’s breathing difficulties forced him to seek treatment at Kalispell Regional Hospital on only two occasions. In July, 1983, he consulted with the hospital emergency room. In June, 1984, he was hospitalized. Within the four months following the accident, however, his visits to the hospital became much more frequent. He visited the hospital emergency room twice — once on May 20, 1985, and again on July 31, 1985. On August 20, 1985, he was hospitalized for four days with severe asthma.
In addition, Eastman’s need to consult with his treating physician had subsided in the months preceding the injury. In 1983, he called or visited Dr. Rosetto almost monthly. In 1984, however, he saw Dr. Rosetto twice — once in June and once in July. He called the doctor three times. His last flare up of asthma prior to April 8, 1985, occurred in December, 1984. After the April accident, however, his asthma repeatedly flared. He consulted Dr. Rosetto at least once a month thereafter.
In Ridenour v. Equity Supply Co. (1983), 204 Mont. 473, 665 P.2d *344 783, a claimant’s preexisting Chronic Obstructive Pulmonary Disease (COPD) was aggravated by a high concentration of grain dust. We awarded the claimant permanent total disability benefits under the Workers’ Compensation Act. Yet in this case, where the facts are almost identical, we award claimant a mere $10,000 under the Occupational Disease Act and send him on his way.
In Ridenour, the claimant was injured on December 18, 1978. He was unable to perform his usual job from that date, though he did attempt less strenuous work. A little over five months after the accident, his breathing difficulties became so severe that he was forced to cease employment.
Unlike the claimant in Ridenour, Eastman returned to his normal job for two weeks after the accident. He was able to do so, however, only because he was heavily medicated with steroids. He returned to work rather than remaining on sick leave because he knew ARCO was planning a large reduction in force and he wanted to work as much as possible before being laid off.
Had Eastman not been laid off as part of ARCO’s general reduction in force, his breathing problems would have soon forced him to quit, just as the claimant in Ridenour eventually ceased working. Slightly over two months after the accident, on June 11, 1985, Dr. Rosetto wrote a letter to Job Service in which he stated that Eastman’s condition had progressively worsened and he would be unable to work in the foreseeable future. On September 9,1985, Dr. Rosetto noted on the medical record that Eastman should not return to work because of recent extensive asthma attacks. Eastman himself testified that, due to his physical condition, he had not been able to return to work since the lay off even though ARCO had called him back two or three times.
The medical record amply demonstrates that the April 8, 1985, injury aggravated Eastman’s disease. Nevertheless, the majority refuses to acknowledge this objective evidence. Instead, the majority relies on the deposition testimony of three doctors — even though one of the doctors, Dr. Power, did not have access to Eastman’s medical record. Dr. Power’s testimony indicates that he was unaware of Eastman’s complete medical history.
Furthermore, the testimony of the remaining doctors does not unequivocally support the majority’s holding. Dr. Rosetto testified that the injury was unlikely to change Eastman’s medical status as of the time of the deposition. He acknowledged that since the accident, Eastman continued to have periods of severe exacerbations. He also *345 stated that Eastman had been on steroids almost continuously since that time and was steroid dependent.
Dr. Schimke’s testimony is more telling. Dr. Schimke testified that the April 8, 1985, incident was not the single underlying cause of Eastman’s disease. However, he could not state with medical certainty that Eastman’s status returned to his preexacerbated condition following the accident. He stated:
“I view the April, 1985, incident as but one in a long series of similar incidents. And I believe I stated if the incident caused hospitalization — and I believe that one did — it could have had some long-term lasting effect. And it is medical speculation, I think, to tell you how much or how little.”
We have previously recognized that “ ‘cautious medical testimony’ should, whenever possible, be interpreted in favor of the claimant.” Wheeler v. Carlson Transport (1985), 217 Mont. 254, 262, 704 P.2d 49, 54. Indeed, in Ridenour, we granted disability benefits based on testimony very similar to that given by the doctors in this case — testimony that the claimant’s accident “may have resulted in more asthma and more bronchitis, which could flare up more readily in the ensuing months and years.” (Emphasis added.) Ridenour, 204 Mont. at 475-76, 665 P.2d at 785. The majority in this case, however, ignores the precedent set in Ridenour and unfairly denies Eastman disability under the Workers’ Compensation Act.
The majority also asserts that there is a rational basis for paying benefits to claimants under the Occupational Disease Act at a lower rate than those paid to claimants under the Workers’ Compensation Act. I wish somebody would tell me exactly what that rational basis is. I certainly cannot find it in this opinion.
I would reverse the Workers’ Compensation Court.
MR. JUSTICES HARRISON and SHEEHY join in the dissent.